Holliday, Admrx., Appellant, *v.* Pacific Atlantic Steamship Corporation.

272

Argued April 8, 1946. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON and STEARNE, JJ.

*Abraham E. Freedman,* with him *Freedman, Landy & Lorry,* for appellant.

*Thomas E. Byrne, Jr.,* with him *John B. Shaw, Timothy J. Mahoney, Jr.,* and *Krusen, Evans & Shaw,* for appellee.

OPINION BY MR. JUSTICE LINN, May 27, 1946:

The plaintiff appeals from an order setting aside the service of the summons in an action of trespass. As administratrix of Clinton Holliday she sued Pacific Atlantic Steamship Corporation for damages resulting from his death on one of defendant's ships on the high seas bound for South Africa. The defendant is a corporation of the State of Delaware, having its principal·office and place of business in Vancouver in the State of Washington. It is not registered in Pennsylvania and maintains no place of business here.

The suit was brought on July 29, 1943.* The sheriff returned that he "served and made known to Pacific Atlantic Steamship Corporation, the within named defendant, on July 30, 1943 at 11:30 o'clock A. M. East-

---

* The suit was brought before the effective date of Rules of Civil Procedure No. 2180 et seq.

ern War Time, by handing a true and attested copy of the within writ at Bourse Building, 5th & Market Streets, in the City and County of Philadelphia, State of Pennsylvania, the place of business of R. A. Nicol and Company, a Corporation and Agent for said defendant corporation, personally to Miss Root, the person for the time being in charge of the said place of business, who stated that her relationship to said R. A. Nicol and Company is that of clerk, being unable to ascertain the residence of any one of the officers of said defendant Corporation within said County, upon inquiry at said place of business.

"The foregoing service was made under the provision of the Act of 1849, P. L. 216 (12 P.S. 1361)."

Defendant appeared specially and obtained a rule to show cause why the service should not be set aside; plaintiff answered; a witness testified, and, after hearing, the court made the rule absolute and set aside the service.

The Act of March 21, 1849, P. L. 216, 12 P.S. 1361, referred to in the sheriff's return, provides that "process may be served upon any officer, agent, or engineer of such corporation, either personally, or by copy, or by leaving a certified copy thereof at the office, depot, or usual place of business of said corporation; and such service shall be good and valid in law to all intents and purposes."

The Act of April 8, 1851, P. L. 353, 12 P.S. 1310, provides: "That in any case when any insurance company or other corporation shall have an agency or transact any business in any county of this Commonwealth, it shall and may be lawful to institute and commence an action against such insurance company or other corporation in such county, and the original writ may be served upon the president, cashier, agent, chief, or any other clerk, or upon any. directors or agent of such company or corporation within such county, . . ."

The Act of 1849 provides for service; the Act of 1851 confers jurisdiction and provides for service: see *Eline v. Western Md. Ry. Co.*, 253 Pa. 204, 97 A. 1076.

In this case, the sheriff's return is not conclusive: *Vaughn v. Love*, 324 Pa. 276, 188 A. 299; *Hagen Corp. v. Empire Sheet & Tin Plate Co.*, 337 Pa. 232, 11 A. 2d 144. It is a question of fact whether a foreign corporation has an agency or transacts any business within the meaning of the words used by the legislature. The record contains the testimony of R. A. Nicol who is President of R. A. Nicol & Co., Inc., a Delaware Corporation, referred to in the sheriff's return. The evidence supports the finding of fact on which the court set aside the service.

The principal office or place of business of R. A. Nicol & Co., Inc., is in New York, though it also maintains an office in Philadelphia; it began doing business in Pennsylvania in 1942. Mr. Nicol is a resident of Montclair, New Jersey, and since 1939 has had no financial interest in defendant corporation. He testified that Pacific Atlantic Steamship Corporation "were general agents for the War Shipping Administration in the operation of" its vessels. During the year 1943, but after the date of the alleged service now involved, R. A. Nicol & Co., Inc., acted for the defendant with respect to four ships coming to Philadelphia, one of them owned by defendant and the other three owned by the War Shiping Administration and operated by the defendant. Asked what his company did for the defendant he said, "A. Well, today we check with the Navy Department as to when a steamer might be expected, and arrange for pilots, for a berth for her on arrival, towboats to put them into the berth, and arrange to pay off the crew and sign them off the articles, order and see delivered stores for the new voyage, and signing on a new crew, dispatch of the vessel, towboats to take her out of here and pilots to take her out. We see that the master attends the Navy routing conferences to get his instructions to go to sea under today's conditions." From the beginning of 1944 until August 25th, when his evidence was given, the Nicol Company handled four ships op-

erated by defendant but belonging to the War Shipping Administration. Mr. Nicol testified that his company was paid "agency fees on a ship basis." He stated that his company had "no contract" with defendant. The understanding was ". . . they would pay me so much in the way of fees per ship." His company rendered no services for the defendant except on the specified occasions.

We understand that at the time of the alleged service in July, 1943, defendant had no ship or ships in Philadelphia and that the Nicol Company was not engaged in doing anything on behalf of defendant: compare *International Harvester Co. v. Kentucky,* 234 U. S. 579. The work which the Nicol Company did for defendant from time to time as occasion presented itself was, in the words of defendant's counsel, "turning a ship around" but there is not enough in the record to sustain in our courts a judgment in personam against the defendant foreign corporation: compare *Shambe v. Del. & H. R. R. Co.,* 288 Pa. 240, 135 A. 755. In *International Shoe Co. v. State of Washington et al.,* 326 U. S. 310, Chief Justice Stone said: " 'Presence' in the state in this sense has never been doubted when the activities of the corporation there have not only been continuous and systematic, but also give rise to the liabilities sued on, even though no consent to be sued or authorization to an agent to accept service of process has been given. [citing cases] . . . Conversely it has been generally recognized that the casual presence of the corporate agent or even his conduct of single or isolated items of activities in a state in the corporation's behalf are not enough to subject it to suit on causes of action unconnected with the activities there. [citing cases] . . . To require the corporation in such circumstances to defend the suit away from its home or other jurisdiction where it carries on more substantial activities has been thought to lay too great and unreasonable a burden on the corporation to comport with due process." Further on he said, "Whether due process is satisfied must de-

276

pend rather upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure. That clause does not contemplate that a state may make binding a judgment *in personam* against an individual or corporate defendant with which the state has no contacts, ties, or relations. Cf. *Pennoyer v. Neff*, 95 U. S. 714; *Minnesota Commercial Men's Ass'n v. Benn*, 261 U. S. 140."

Order affirmed.