## Law v. Atlantic Coast Line Railroad Company

Meyer, Lasch, Hankin & Poul, for plaintiff.
H. Francis DeLone, for defendant.

MILNER, J., April 25, 1950.—Plaintiff was employed by defendant railroad as a pantryman waiter on defendant's train and on November 19, 1948, was injured on defendant's train in Miami, Fla. Defendant is a foreign railroad corporation incorporated under the laws of Virginia and having its office and principal place of business in Wilmington, N. C. He brought a suit in trespass and has filed a complaint therein against defendant railroad in this court under the Federal Employers' Liability Act. Defendant railroad has filed preliminary objections to the suit and complaint under Pa. R. C. P. 1017(b) the gist of which objections is that there is a lack of jurisdiction of this court over defendant railroad because defendant corporation does no business in Philadelphia County or Pennsylvania and there has been no valid service of process upon it in this action in trespass.

Pa. R. C. P. 2179(a) establishes the venue in actions against corporations. Under that rule a personal action against a corporation may be brought only in "(1) the county where its registered office or principal place of business is located; or (2) a county where it regularly conducts business". Defendant has no registered office or principal place of business in Philadelphia county, so that the venue in the instant case can be sustained only if Philadelphia is a county where defendant "regularly conducts business." The practice in Pennsylvania has always required that a foreign corporation "do business" in the particular county in which the action in personam is brought or that the

cause of action arise in that county. The Act of April 8, 1851, P. L. 353, sec. 6, which was suspended by Pa. R. C. P. 2200-6, provided as follows: "It shall and may be lawful to institute and commence an action against" a foreign corporation in any county where it shall transact business or have an agency. Pa. R. C. P. 2179($a$) is substantially declaratory of the prior law and the rule merely codifies the above-mentioned practice and applies the same principle to all corporations, domestic or foreign. Under the due process clause of the fourteenth amendment to the Federal Constitution it is required that a foreign corporation do business in a State to subject it to suit there. The local venue within the various subdivisions of the State is not a Federal matter and may be freely regulated by the State.

The question of whether a foreign corporation is "doing business" in a State or subdivision thereof is, of course, one of fact. . . . [The court here proceeded to quote a stipulation of facts indicating that defendant's activity in Pennsylvania had been limited to the solicitation of freight and passenger business and the handling of complaints from residents in the area. Tickets over defendant's lines were sold in Pennsylvania by connecting carriers.]

In Goodrich-Amram, Standard Pennsylvania Practice, in the comments on Rule 2179($a$)-3 it is said:

"The phrase 'doing business' has at least three connotations—(1) doing business so as to require registration with the Secretary of the Commonwealth and the securing of a certificate of authority; (2) doing business so as to be subject to the imposition of Pennsylvania corporation taxes; (3) doing business so as to be subject to suit in actions in personam within the state. In many instances the requirements may be identical, but it is not impossible that the foreign corporation may be conducting enough business to require

registration or to be subject to taxes, yet at the same time not be subject to a suit in personam. Decisions relating to taxing, licensing or to state laws that impede the free flow of interstate commerce do not control the question of service of process."

We are concerned here with the third of the above connotations, viz., whether a foreign railroad corporation is doing business in the County of Philadelphia of this State so as to subject it to a suit in personam in this court. The decisions of appellate courts upon which plaintiff relies in support of the service made in this case are in the main cases which fall under the first and second of the above connotations and in our opinion are not controlling in the case at bar.

The leading case in Pennsylvania on the question before us is Shambe v. Delaware & Hudson R. R. Co., 288 Pa. 240 (1927), in which case service of the summons was set aside where it appeared that the activities of defendant within Philadelphia County were substantially identical with the activities of defendant here involved. In that case, it was pointed out that, unless a foreign corporation is doing business within a State, the State has no power to subject the foreign corporation to its jurisdiction, and that the mere solicitation of business by a railroad company does not constitute "doing business". The Supreme Court held that solicitation of business for the railroad company was not necessary to its existence but was merely collateral or incidental to the main purpose of carrying freight and passengers and that under the facts in the case the business transacted by the railroad in Philadelphia was the solicitation of freight, etc., and did not amount to "doing business". . . .

We have found no case in which the decision in the Shambe case has been reversed by the appellate courts of this State, but we find that it has been cited repeatedly with approval in recent decisions of the Pennsyl-

vania Supreme Court. See Otto A. C. Hagen Corp. v. Empire Sheet and Tin Plate Co., 337 Pa. 232, 234 (1940) ; Holliday, admrx., v. Pacific Atlantic Steamship Corp., 354 Pa. 271, 275 (1946) ; New v. Robinson-Houchin Optical Co., 357 Pa. 47, 49 (1947). These cases authoritatively establish that something more than solicitation is required in order to sustain service of process, under the Pennsylvania provisions concerning venue in actions against foreign corporations.

This court in a number of decisions has followed the reasoning in the Shambe case. In fact, this court, in an opinion by President Judge MacNeille dated July 9, 1942, set aside service of a summons on the Atlantic Coast Line Railroad Company for want of jurisdiction, in the case of Ethel Freedman v. Atlantic Coast Line R. R. and The Pennsylvania R. R., as of C. P. No. 3, March term, 1942, no. 1222. In that case the facts, which appeared from lengthy depositions that had been taken in connection with defendant's motion to set aside service, were identical with the facts shown by the stipulation that has been filed in the instant case. This court cited the Shambe case and other cases considered by us in this opinion and stated that it was "compelled to hold that the Atlantic Coast Line Railroad Company . . . by maintaining an office in this state for the solicitation of business and by permitting tickets to be sold by the Pennsylvania Railroad, a coupon of which was good for passage over the said defendant railroad, or by sending its freight and passenger cars into this state, was not 'doing business' within this state." Another decision of this court to the same effect is Sheetz v. Chesapeake & Ohio Railway Co., 10 Dist. R. 373 (1901). There are many other cases in the lower courts of our State to the same effect, e.g., Wilkinson's Sons v. Atlantic Coast Line R. R. Co., 34 Pa. C. C. 347 (C. P. No. 2, Phila., 1907) ; Foster v. Atlantic Coast Line R. R. Co., in the Municipal Court of

Philadelphia, as of April term, 1937, no. 2; Wood v. Cunard Steamship Co., 23 Dist. R. 421 (C. P. No. 5, Phila., 1914).

The decision of the United States Supreme Court in Green v. Chicago, Burlington & Quincy Ry., 205 U. S. 530 (1907) is to the same effect and recognizes the invalidity of service of process on a railroad company whose activities within the jurisdiction are no greater than those of defendant in this case. In fact the decision in the Green case influenced the opinions of our appellate and lower courts. We have found no decision of the Supreme Court of the United States which reverses its decision in the Green case.

In 46 A. L. R. 570 (1927), there is a review of the cases from various jurisdictions on the question of a foreign railroad corporation as subject to service of process in a State in which it merely solicits interstate business. The annotator concludes the article (on page 589) as follows:

"As a result of the cases heretofore cited in this annotation, it may be stated without fear of contradiction that if the statutes are broad enough, while a foreign railway corporation which is engaged solely in soliciting business within the state for its lines without the state, and not making contracts of shipment within the state, or doing other local business, is not subject to service of process within the state, since it is not doing business within the state within the requirement of the due process clause of the 14th Amendment (Green v. Chicago, B. & Q. R. Co. (U. S.) and other cases cited supra, III. b), if the soliciting agency goes beyond those things necessarily appertaining to the business of a soliciting agency, such as the issuing of bills of lading, settling claims, etc., it is doing business there and is amenable to the process of the courts. . . ."

In a later annotation on the the same subject in 95 A. L. R. 1478 (1935) the later cases are reviewed, and the annotator (at page 1,484) makes the following statement:

"The conclusion reached in the corresponding subdivision of the original annotation, to the effect that while a foreign transportation company engaged solely in soliciting business within the state for its lines without the state, and not making contracts of shipment within the state, is not doing business within the state within the requirement of the due process clause of the Fourteenth Amendment, and is not therefore subject to service of process within the state, if the soliciting agency goes beyond those things necessarily appertaining to the business of a soliciting agency, such as the issuing of bills of lading, settling claims, etc., it is doing business there, and is amenable to the process of the courts, unless to subject the corporation to suit in a particular case would impose an unreasonable burden upon interstate commerce, is supported by the decisions reached in the more recent cases herein considered."

It is true that it has been held if there is solicitation "plus" other activities, such as issuing bills of lading, settling claims, etc., it may result in the court's considering a railroad company as "doing business", but the defendant in this case does not issue bills of lading, settle claims or enter into contracts of sale, and in our opinion is not engaged in anything more than the solicitation of business.

Plaintiff maintains that "the law has progressed to the point where at this time 'mere solicitation' is considered sufficient to sustain jurisdiction, especially in cases under the Federal Employers' Liability Act." Our Supreme Court discusses this contention in the Shambe case at page 250 and states, that, "A very respectable number of states have not so held." The

cases cited by plaintiff in support of his contention are for the most part cases arising upon facts differing from those in the case at bar, such as cases involving sales offices established by manufacturing or merchandising companies in various States, and are largely cases arising in the Federal courts.

In plaintiff's brief, it is suggested that the only issue raised by defendant's preliminary objections under Pa. R. C. P. 1017(b) (1) is whether or not defendant is "doing business" within the meaning of that term as used in section 6 of the Federal Employers' Liability Act, 45 U. S. C. §56. An examination of the Federal statute, under which plaintiff claims to derive his cause of action, reveals the fallacy of plaintiff's position in this respect. Section 6 of the act, which pertains to venue and which is set forth at pages 1 and 2 of plaintiff's brief, provides, in the first portion thereof, that an action brought under the act "may be brought *in a district court of the United States*, in the district of the residence of defendant, or in which the cause of action arose, or in which defendant shall be doing business at the time of commencing such action." Thus, the first sentence of section 6 fixes the venue for suits brought in a Federal district court and provides that for that purpose a defendant may be sued in a Federal district in which it is doing business. Of course, had this suit been brought in a Federal court, then the meaning of the term "doing business", as used in the Federal Act, would be found in the Federal decisions. The second sentence of section 6 of the Federal Act provides for suits under the act in State courts, as follows:

"The jurisdiction of the courts of the United States under this chapter shall be concurrent with that of the courts of the several States, and no case arising under this chapter and *brought in any state court of*

*competent jurisdiction* shall be removed to any court of the United States." (Italics supplied.)

Thus, as to suits in State courts, the Federal Act does not attempt to define the venue within the State system involved, nor does it attempt to establish the jurisdictional standards which are to be applied by the State court. The act merely recognizes that State as well as Federal courts have concurrent jurisdiction to enforce liabilities which arise under the Federal Act, and no attempt is made to regulate the State procedures. That such was the purpose of the Federal Congress was decided shortly after the Federal statute was enacted, when its constitutionality was questioned. The United States Supreme Court, in Second Employers' Liability Cases, 223 U. S. 1, 56, 57, 59 (1912), considered the problem and stated:

". . . we deem it well to observe that there is not here involved any attempt by Congress *to enlarge or regulate the jurisdiction of state courts or to control or affect their modes of procedure,* but only a question of the duty of such a court, when *its ordinary jurisdiction as prescribed by local laws is appropriate to the occasion and is invoked in conformity with those laws,* to take cognizance of an action to enforce a right of civil recovery arising under the act of Congress and susceptible of adjudication according to the prevailing rules of procedure. . . .

"We conclude that rights arising under the act in question may be enforced, as of right, in the courts of the States *when their jurisdiction, as prescribed by local laws, is adequate to the occasion.*" (Italics supplied.)

In Douglas v. New York, New Haven & Hartford R. R. 279 U. S. 377 (1929), the Supreme Court considered whether or not the State courts of New York can decline to exercise jurisdiction of a cause of action arising under the Federal Employers' Liability Act

on the basis of a State statute prohibiting suits in the courts of New York by nonresidents against foreign corporations on causes of action arising from foreign torts. It was held that the State court could decline to exercise jurisdiction, Justice Holmes saying (p. 387) :

"As to the grant of jurisdiction in the Employers' Liability Act, *that statute does not purport to require State Courts to entertain suits arising under it, but only to empower them to do so,* so far as the authority of the United States is concerned. It may very well be that if the Supreme Court of New York were given no discretion, being otherwise competent, it would be subject to a duty. But *there is nothing in the Act of Congress that purports to force a duty upon such Courts as against an otherwise valid excuse. Second Employers' Liability Cases,* 223 U. S. 1, 56, 57." (Italics supplied.)

In the recent case of Herb v. Pitcairn et al., 324 U. S. 117, 120 (1945), the United States Supreme Court again reaffirmed the principles announced in the Second Employers' Liability Cases and in the Douglas case. In that case it was clearly recognized that, where suit is brought under the Federal Employers' Liability Act in a State court, the State law is controlling both as to jurisdiction and as to venue.

Thus, it is apparent that whether or not this court has jurisdiction over defendant and whether or not the venue in Philadelphia County is proper are matters to be determined by State law and are not Federal questions.

We are not persuaded that even under the Federal cases defendant could be held to be doing business in Philadelphia County of the State of Pennsylvania so as to be subject to the jurisdiction of this court. Plaintiff relies heavily upon the decision of the United States Supreme Court in International Shoe Co. v. State of Washington et al., 326 U. S. 310 (1945). That case

involved the power of the State of Washington to collect an unemployment compensation tax from the shoe company, which had a large number of salesmen soliciting business in the State. It appeared that there were activities in addition to solicitation, such as the display of samples in permanent display rooms, continuous residence of the salesmen within the State, and the shipment of substantial volumes of merchandise into the State. The Supreme Court sustained imposition of the tax and jurisdiction to enforce its collection, but the court's decision was expressly limited to the situation where the subject matter of the suit was directly related to the activities conducted within the State by the foreign corporation. . . .

The instant case is not a suit on a cause of action which arose within this jurisdiction, nor does it involve the question of the powers of the State to tax, and it is therefore clearly distinguishable from the International Shoe case. In fact, the Supreme Court, in the International Shoe case, cited the case of Green v. Chicago, Burlington & Quincy Ry., supra, in which it had been held that a railroad company engaged in solicitation such as the solicitation involved in the instant case was not doing business in the jurisdiction where the solicitation occurred. Nowhere in the International Shoe opinion is it said that the Green case is overruled. It will be recalled that the second connotation of "doing business" which we referred to above was doing business so as to be subject to State taxes and that it has been held that decisions relating to taxing do not control the question of service of process in a tort action.

Counsel for plaintiff also relies on the recent decision of Judge Ganey in the United States District Court for the Eastern District of Pennsylvania in Kendrick v. Seaboard Air Line R. R., civil action no. 6754 (opinion dated February 8, 1949). In that decision, Judge

Ganey, on the authority of the International Shoe case, did sustain service of process against defendant railroad company whose activities in the jurisdiction were not substantially different from the activities of the Atlantic Coast Line Railroad Company in Philadelphia. This decision may have been influenced by an amendment to the United States Code effective September 1, 1948, although we do not consider it is in line with the decision of the United States Supreme Court in the Green case, supra. The amendment to the code provides:

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

The Federal court could not transfer a suit under the Federal Employers' Liability Act to a State court and a State court could not transfer it to another jurisdiction. If the case were properly before the district court in Eastern Pennsylvania the Federal court could transfer it to the Federal court in which Miami, Fla., is located, which was the scene of the accident. Plaintiffs in suits under the Federal Employers' Liability Act often seek a forum which promises the richest harvest because of the inconvenience to which it puts a defendant in obtaining witnesses and transporting them to a distant place for trial. Not being able to do this under the new amendment to the code, they may then seek to accomplish the same result by bringing the suit in a distant State court. But they must comply with the requirements as to venue prevailing in the State court in which the suit is brought. We are of the opinion that plaintiff in the case at bar has not met those requirements. Furthermore, Judge Ganey's views are not shared by other members of the District Court for the Eastern District of Pennsylvania. Thus, Judge Kirkpatrick, the senior judge for

the eastern district, in Murray v. Great Northern Ry. Co. et al., 67 F. Supp. 944 (E. D., Pa., 1946), rejected the contention that the International Shoe case required the sustaining of service of process on a foreign railroad engaged in the solicitation of business within the eastern district. He pointed out that the facts were the same as those involved in the Green case, which has never been overruled either expressedly or impliedly, and distinguished the International Shoe case as follows (p. 944) :

"The recent case of International Shoe Co. v. State of Washington, etc., . . ., is distinguishable on several points from the present case. In that case the salesman solicited orders for merchandise, the filling of which was the business of the defendant, and the decision dealt with the power of a state to regulate the activities of a foreign corporation within its borders and its power to enforce such regulation through its courts."

Similarly, Judge Russell, in Zuber v. The Pennsylvania R. R., 82 F. Supp. 670 (N. D. Ga., 1949), held that the Green case is still good law. See also Earle v. Chesapeake & Ohio R. Co., 127 Fed. 235 (E. D. Pa., 1904). In Fiorella v. B. & O. R. R. Co. and C. M. S. P. & P. R. R. Co., in the United States District Court for the Eastern District of Pennsylvania, civil action no. 10003, (not yet reported) the facts were similar to the facts at bar with respect to the Chicago, Milwaukee, St. Paul and Pacific Railroad Co. Judge Bard filed an opinion in that case on April 6, 1950, in which he followed the reasoning of Judge Kirkpatrick in the case of Murray v. Great Northern Ry. Co., supra, rather than that of Judge Ganey in Kendrick v. Seaboard Air Line R. R., supra, saying "I should be guided by what Judge Kirkpatrick has established to be the law in this district", and sustained a motion to quash the service of summons on the C. M. S. P. & P. Railroad. . . .

Judge Bard also held that the obtaining of tickets by defendant's Philadelphia office over a connecting line as an accommodation to those persons whom it had solicited to travel on its lines for part of the way, or even the occasional sale of a ticket, was only an occasional or incidental act and "not sufficient to distinguish the case from the Green case". To same effect see the decision of the Supreme Court of Minnesota in Gloeser v. Dollar Steamship Lines, infra.

After this case was argued before the court on January 13, 1950, the attorneys for the parties agreed to file a supplemental stipulation of facts which was not submitted to the court until April 14, 1950. . . . In brief, the supplemental stipulation is to the effect that some dining cars and tavern cars owned by defendant travel through Philadelphia County as part of the trains of the Pennsylvania Railroad Company and on railroad lines owned by the Pennsylvania Railroad Company. Defendant is paid rental for such of its dining cars as are used by the Pennsylvania Railroad Company in this manner and that company absorbs the cost of interior cleaning, icing, watering and fueling said cars. Certain other costs are prorated between the railroads on a mileage basis. Food and drinks are served on these cars by waiters and stewards who travel with the cars and are paid by defendant, but the Pennsylvania Railroad Company has entire supervision of the operation of the trains, including defendant's dining and tavern cars, and they are in charge of the Pennsylvania Railroad's conductors, engineers and other supervisory personnel while on the lines of the Pennsylvania Railroad, are subject to the rules, regulations and orders of that company, and for good cause the Pennsylvania Railroad Company has the right to hire and fire such dining and tavern car employes and exclude from its trains such of these employes as are objectionable to it. Defendant company purchases the

food and drinks sold on its dining cars and retains the receipts from the sale of the same on its cars, but this service is rendered by defendant at a loss.

Plaintiff maintains that these additional facts constitute something more than "mere solicitation" and hence that defendant is doing business in Philadelphia County. With this we do not agree and in our opinion the supplemental stipulation of facts does not alter the conclusion we have reached in this case, viz., that defendant is not doing business in the County of Philadelphia within the meaning of the decisions of our courts. In our opinion the additional facts stipulated do not meet the test laid down by our Supreme Court in Shambe v. Delaware & Hudson R. R. Co., supra (at pages 246 and 247), wherein the Supreme Court held, inter alia, that to constitute "doing business" in the State "the business engaged in must be sufficient in quantity and quality", and that the term "quality of acts" means "those directly furthering or essential to, corporate objects; they do not include incidental acts:". The corporate object of defendant is railway transportation and the dining and tavern cars are clearly incidental to that object of its incorporation. Sleeping car, parlor car, observation and dining car services are not operations separate and unconnected with the transportation of passengers. On American railways of importance these services have been well-nigh universal for over a generation. To subject defendant to local jurisdiction because it has railway cars engaged in interstate transportation would amount to an unlawful burden on interstate commerce. See Gloeser v. Dollar Steamship Lines, 256 N. W. 666; Philadelphia & Reading Railway Co. v. McKibbin, 243 U. S. 264; Denver & Rio Grande Western Railroad Co. et al. v. Terte, 284 U. S. 284.

As stated above in the case of Freedman v. Atlantic Coast Line R. R. and The Pennsylvania R. R., supra,

this court held that the Atlantic Coast Line Railroad Company was not doing business in this State and in that case the fact that the crews of defendant's dining cars remained on the cars after they entered this State and proceeded on the lines of the Pennsylvania Railroad was considered by this court. . . .

The fact that wages of the waiters and stewards on defendant's dining and tavern cars were paid by defendant does not make them defendant's employes while they are in Philadelphia County. The true criterion established in the Pennsylvania cases is the right of control, and the question of who pays the wages is not in any way determinative of the right of control: McGrath v. Budd Manufacturing Co., 348 Pa. 619 (1944); Siidekum, admr., v. Animal Rescue League of Pittsburgh et al., 353 Pa. 408 (1946). The decision of the United States Circuit Court of Appeals for the Third Circuit in Delaware and Hudson Co. v. Van Derpool, 292 Fed. 688 (1923), is squarely on point in this connection. There it was held that, although a train owned by defendant, Delaware and Hudson Co., was being operated by an engineer and train crew in that company's general employ, while traveling over the tracks of another railroad (the Napierville Company), plaintiff could not recover from defendant for the engineer's negligence. Rather, the court held that the engineer was a lent servant in the employ of the Napierville Company at the time of the accident. This conclusion was based on the fact that, under the terms of the contract between the two railroads, the Delaware and Hudson Company had agreed to permit its crews and equipment, which were operating as a through train from New York to Montreal, to continue the operation over the Napierville Company's line—the latter company paying to the Delaware and Hudson Company rental for the equipment plus a sum equal to its proportionate share of the

wages of the crew. By the terms of the contract, the Napierville Company had charge of the trains, which were to be operated under its direction and control. The contract further provided, as is true regarding the dining car and tavern car employes in the instant case, that the employes of the Delaware and Hudson Company should be governed by the standard rules of the Napierville Company while operating trains over the Napierville Company's tracks. The court reasoned, in effect, that the train crew was subject to the control of the Napierville Company at the time the accident occurred, despite the fact that they were in the general employ of and paid by the Delaware and Hudson Company. Since, in that case, the entire train crew were employes of the Delaware and Hudson Company, whereas here only the dining and tavern car crews are paid by defendant, it follows a fortiori that, if the train crew in the Delaware and Hudson case were lent servants, then, similarly, the dining car and tavern car crews in the instant case are lent servants.

From the supplemental stipulation of facts it is apparent that the dining and tavern car waiters and stewards were lent servants and were under the supervision and control of the Pennsylvania Railroad Company. This conclusion is fortified by the agreement between defendant and the Pennsylvania Railroad Company, set forth in the stipulation, whereby defendant agreed to indemnify the Pennsylvania Railroad Company for any loss, damage, etc., to the railroad by reason of the acts of these waiters and stewards. The facts that the waiters and stewards on the dining and tavern cars were paid by defendant under the facts and circumstances in this case did not constitute a doing of business so as to bring defendant within the jurisdiction of this court upon the service of process made in this case.

For the reasons given above we are of the opinion that defendant under all the facts in this case is doing

no more than soliciting business in Philadelphia County in this State and that it is not doing business here so as to make it subject to an action in personam.

We therefore enter the following

*Order*

And now, April 25, 1950, the preliminary objections filed by defendant are sustained and the service of process in this case is set aside.