## Levy v. Curtis Shoe Company, Inc.

*M. H. Morgan*, for plaintiff.
*Goff & Rubin*, for defendant.

OLIVER, P. J., May 2, 1950.—This matter is before the court on a petition and rule to strike off service of a writ of summons in assumpsit.

Defendant is an unregistered foreign corporation engaged in the manufacture and sale of shoes, with its principal office at Marlboro, Mass. For some ten years prior to January, 1946, plaintiff was employed by defendant as its exclusive territorial sales representative for a large area on the eastern seaboard, including the City of Philadelphia. This cause of action arises out of the failure on the part of defendant to pay plaintiff certain commissions allegedly due him on orders obtained by plaintiff in Philadelphia and elsewhere during the year prior to the termination of his employment with defendant corporation on January 18, 1946.

On January 26, 1948, plaintiff instituted an action in assumpsit. On the same day, service of the writ of summons was made on Mercer E. Curtis, vice president of defendant corporation, at the Benjamin Franklin Hotel, Ninth and Chestnut Streets, Philadelphia, by the sheriff of Philadelphia County. Subsequently, defendant entered its appearance de bene esse and filed a motion to strike off service of the writ of summons on the ground that defendant was not amenable to the jurisdiction of this court, alleging, inter alia, that defendant maintained no office here for the transaction of business, and that it was not doing business in the County of Philadelphia or in the State of Pennsylvania. Plaintiff filed an answer in which the essential averments of defendant's petition were denied.

We cannot pass over the failure of the parties to comply with the provisions of the Pennsylvania Rules of Civil Procedure. As this court said in Jamison v. United Cigar Whelan Stores et al., 68 D. & C. 121, 123:

"Before the Practice Act, setting aside service by rule rather than by a plea in abatement had 'the sanction of precedents' . . . Under the Practice Act, de-

fendant could challenge his amenability to suit either by his affidavit of defense, . . . or by a rule to show cause why the writ should not be set aside. . . . The Act of March 5, 1925, P. L. 23, sec. 2, 12 PS §673, allowed for the raising of jurisdictional questions preliminarily by a de bene esse appearance with the right of immediate appeal. Under the new Rules of Civil Procedure, a preliminary objection is proper, for rule 1017(b) (1), replaces the practice of raising the jurisdictional question by means of the procedure in accordance with the Act of March 5, 1925, supra."

That we proceed, therefore, to dispose of the questions before us, notwithstanding the manner in which they were raised, is not to be taken as a precedent.

The sole issue presented for our consideration is whether the defendant corporation was "doing business" in the County of Philadelphia within the meaning of the statutes of the Commonwealth of Pennsylvania and the Pennsylvania Rules of Civil Procedure, so as to make itself amenable to process in the courts of this county, where the cause of action arose out of, or was connected with the transacting of, such business.

The A. L. I. Restatement of the Law of Conflict of Laws §93, states:

"A state can exercise through its courts jurisdiction over a foreign corporation which has done business within the state but has ceased so to do business at the time of service of process, as to causes of action arising out of the business done within the state, if, by the law of the state at the time when the business was done, the corporation by doing business in the state subjected itself to the jurisdiction of the state to that extent:"

In Griffin & Vose, Inc., v. Non-Metallic Minerals Corporation, 50 D. & C. 516, 520, Judge Sloane said:

". . . inactivity (of a defendant foreign corporation) is no obstacle to proper service if there was prior activity, prior 'doing business', and there is a cause

of action arising out of the business done within the State:" See also Ladd et al. v. Brickley et al., 158 F. (2d) 212, 217; Smith v. Hydro Gas Co. of West Florida, Inc., et al. 157 F. (2d) 809, 810; Securities and Exchange Commission v. Minas De Artemisa, S. A., 150 F. (2d) 215, 217.

Pa. R. C. P. 2179(a)(2) provides that a personal action against a corporation or similar entity may be brought in and only in a county where it regularly conducts business. Rule 2180(a)(1) provides that service of process within the county in which the action is instituted shall be made upon a corporation by the sheriff of that county, by handing a true and correct copy thereof to an executive officer of the corporation. Rule 2176 defines the term "executive officer" used in Rule 2180, as including a vice president of a corporation.

The depositions taken by the parties reveal that, at the time of service of process, Mercer E. Curtis was present in this city attending a shoe show there being held, sponsored by the Middle Atlantic Shoe Retailer's Association. Defendant corporation rented several rooms at the hotel and displayed sample merchandise therein. Defendant's agents also attended the affair, writing many orders and opening new accounts. Mr. Curtis testified that he came to the show to renew old acquaintances and talk to old business friends, and that he personally did not sell any shoes. But the reason for his presence is immaterial. If the corporation is "doing business", or has done business within the meaning of A. L. I. Restatement of the Law of Conflict of Laws §93, cited above, and the venue is properly laid, service upon a proper corporate officer is unquestionably good regardless of how or why he happens to be within the reach of the process: See Goodrich-Amram, §2180(a)17, page 150.

The Act of April 8, 1851, P. L. 353, sec. 6, 12 PS §1310, provides that, suit may be brought against a foreign corporation where it ". . . shall have an agency or transact any business . . ." within the Commonwealth. As pointed out in Shambe v. Delaware & Hudson R. R. Co., 288 Pa. 240, 246, the essential elements which constitute doing business under the statute above quoted, are the same as those necessary under the due process clause of the Federal Constitution. They are: (1) The foreign corporation must be present in the State; (2) by an agent; (3) duly authorized to represent it in the State; (4) the business transacted therein must be by or through such agent; (5) the business engaged in must be of a sufficient quantity and quality, and (6) there must be a statute making such corporation amenable to suit.

There is no general principle which conclusively establishes in every case what constitutes doing business. Each case is governed by the facts presented therein: Holliday, Admx., v. Pacific Atlantic Steamship Corp., 354 Pa. 271. "Mere solicitation of business within the commonwealth does not in itself constitute the 'doing of business'. It must be 'solicitation plus other activities': International Shoe Co. v. State of Washington, 326 U. S. 310; Frene v. Louisville Cement Co., 134 F. (2d) 511": New v. Robinson-Houchin Optical Company, 357 Pa. 47, 49. See also Otto A. C. Hagen Corporation v. Empire Sheet & Tin Plate Co., 337 Pa. 232; Mingus et al. v. Florence Mining & Milling Co., 302 Pa. 529; Eline v. Western Maryland Railway Company, 253 Pa. 204.

The question is thus narrowed to a consideration of the corporate activities carried on in this jurisdiction prior to January 18, 1946.

Plaintiff was employed by defendant corporation in March, 1936, as its sales representative with the general duties of selling shoes to retail outlets and estab-

lishing dealerships, on a six percent commission basis. He remained in defendant's employ approximately 10 years, until January 18, 1946. During this time, plaintiff occupied an office in this city, originally at the Central Trust Building for five years, and thereafter at the Denckla Building until the termination of plaintiff's employment. The name "Curtis Shoe Company" appeared on the doors of both offices, and on the directory in both buildings. The telephone at each office was also listed in the name of the defendant corporation.

The office rent, telephone bills, salaries of the stenographer and clerk, postage, telegrams and other incidentals were advanced, in the first instance, by plaintiff, and then returned to him by defendant, then finally charged to plaintiff's commission account. Defendant's stationery and envelopes, used by plaintiff in corresponding from the Philadelphia office, carried the request, "Reply to Philadelphia Office, Denckla Building". Notices of shoe style shows, where defendant exhibited its merchandise, and catalogs were mailed from the Philadelphia office. In addition to the foregoing, defendant advertised locally in trade newspapers and in John Wanamaker's annual Christmas catalog. In each instance, the Philadelphia office of defendant corporation was listed as such, and plaintiff handled the advertising. In the Philadelphia office, defendant maintained a sample window set of display material which it sold to dealers, and certain electric signs and other display cards which defendant furnished to its dealers for advertising purposes. Likewise, approximately 150 samples of Curtis products were on display at the office. Each year defendant participated in, and still participates in, the Middle Atlantic Retailers' Association shoe show held in Philadelphia. The sole purpose of this exhibit was, and is, the promotion of business, resulting in a large number

of orders obtained and new accounts opened during the show.

Defendant's shoes were sold in Philadelphia through retail dealers. Orders were taken by plaintiff subject to cancellation by defendant in the event that plaintiff exceeded his quota, or if the customer's credit rating was unsatisfactory. The shoes were shipped to the retailer from the factory in Massachusetts, and on occasions, plaintiff selected the carrier. The order blank did not state that orders were subject to acceptance at the home office, and, for all practical purposes, the order was final when written. Throughout the term of plaintiff's employment, only two small orders amounting to $1,000 were cancelled.

Accounts were serviced by plaintiff; fill-in orders were made over the telephone; special credit concessions were authorized by defendant and made by plaintiff; plaintiff followed up delinquent accounts, either collecting them personally or arranging to have the satisfaction mailed to defendant. Twice a year, at the end of each season, plaintiff sold defendant's samples to a Philadelphia customer at a price agreed upon between the customer and plaintiff. Payment was made to plaintiff and forwarded by him to defendant.

The dollar volume of business carried on in Philadelphia was, and is, considerable. Defendant had, and presently has, between 12 and 15 accounts here. For the years 1942 through 1946, the John Wanamker account alone represented over $200,000 of business. While Wanamaker's orders were placed through the Philadelphia store, half of the shoes were shipped to and sold in its New York store. On many occasions the president of defendant corporation journeyed to Philadelphia to assist plaintiff in handling the Wanamaker account.

The foregoing activities were carried out through the Philadelphia office and were continuous, systematic and habitual. It is our opinion that the defendant foreign corporation was clearly "doing business" within the meaning of the statute. Although defendant's activities at the time of service of process had changed in that their business was then no longer conducted through a Philadelphia office, as we pointed out above so long as the cause of action arose out of, or was connected with, the transaction of business locally at a time when the corporation was "doing business" within the jurisdiction, it is amenable to process in the courts of this county.

For the reasons assigned herein defendant's rule to strike off service of summons treated as a "preliminary objection" is dismissed.