## STOREY v. UNITED INS. CO.
### Civ. A. No. 1395.

District Court, E. D. South Carolina, Columbia Division.

Feb. 12, 1946.

Jack D. Hall, of Batesburg, S. C., for plaintiff.

Thomas, Cain & Black, of Columbia, S. C., for defendant.

TIMMERMAN, District Judge.

The plaintiff brought this action in the state court to recover of the defendant the sum of $5,000. The action is based on a "New Century Accident and Sickness Policy" of insurance, No. CL–200052, issued by the defendant United Insurance Company of Chicago, Illinois. The insured is dead. The beneficiary is the plaintiff, the widow of the insured. The action was removed to this court in October of 1945. The defendant now moves the Court to quash, vacate and set aside "the attempted service upon it of the summons and complaint in this action, upon the ground that the Court does not have jurisdiction over the person of this defendant".

Admittedly the plaintiff is a citizen and resident of South Carolina, as was the insured at all relevant times, and the defend-

ant is a non-resident corporation of the State of Illinois and the jurisdictional amount is at issue. The summons and complaint were served on the defendant under the provisions of the South Carolina Uniform Unauthorized Insurers Act, Act No. 140, April 24, 1943, 43 Statutes at Large of South Carolina, page 210 et seq. The validity of this Act is not questioned; and it is admitted for the purposes of this motion that if the defendant was engaged in business in South Carolina the service is good. However, it is contended by the defendant that the Act does not apply to it; that the defendant falls without the terms and scope of said Act, since, as it contends, it "never has done business within the State of South Carolina", has no "office or agent in the State", and "owns no property therein, and does not enter into any contracts or transact business within the State of South Carolina"; and that "for this Court to hold that it does have jurisdiction over the defendant would be in violation of the Fourteenth Amendment of the Constitution of the United States, in that it would deprive this defendant of its property without due process of law and deny it of the equal protection of the law." The following colloquy between the Court and defendant's counsel will serve to disclose the defendant's position:

"Mr. Cain: We are not attacking the constitutionality of this Act. We are merely saying it is inapplicable to facts presented by this case, in that we are not transacting business within contemplation thereof.

"The Court: Then your position is that under Section 5 defendant has not been doing business within the state as it defines doing business?

"Mr. Cain: Yes, sir; that we did not issue or deliver a policy of insurance in this State to a resident of this State. It is our position that the entire contract was made and was to be performed in the State of Illinois.

"The Court: Your attack is centered on the first five lines of Section 5?

"Mr. Cain: Yes, sir; in the sense that we claim that there was no issuance or delivery of the policy here as contemplated by that language."

Sections 1, 2 and 3 of the Uniform Unauthorized Insurers Act prohibits persons, corporations, associations and partnerships in South Carolina from acting for unauthorized insurers and from aiding them in doing business in the state. Section 4 exempts certain classes of insurance from the operation of Sections 1, 2 and 3 of the Act, but such exemptions are not relevant. Section 5 of the Act, subsection (a) thereof, reads as follows: "(a) The transacting of business in this state by a foreign or alien insurer without being authorized to do business in this state and the issuance or delivery by such foreign or alien insurer of a policy or contract of insurance to a citizen of this state or to a resident thereof, or to a corporation authorized to do business therein, is equivalent to an appointment by such insurer of the Commissioner of Insurance and his successor or successors in office, to be its true and lawful attorney, upon whom may be served all lawful process in any action, suit or proceeding arising out of such policy or contract of insurance, and the said issuance or delivery is a signification of its agreement that any such service of process is of the same legal force and validity as personal service of process in this state upon it."

The remaining subsections of said section prescribe the methods of service that may be used, but they are unimportant since no question is raised as to the service on the defendant, if the defendant was in fact amenable to service of process.

Section 7 of the Act first prescribes the conditions under which an unauthorized insurer may plead in a suit or proceeding instituted against such an insurer; then in subsection (c) thereof it is provided: "(c) Nothing in subsection (a) of this section is to be construed to prevent an unauthorized insurer from filing a motion to quash a writ or to set aside service thereof made in the manner provided in subsections (b) or (c) of Section 5 hereof on the ground either (1) that no policy or contract of insurance has been issued or delivered to a citizen or resident of this state or to a corporation authorized to do business therein, or (2) that such insurer has not been transacting business in this state, or (3) that the person on whom service was made pursuant to subsection (c) of Section 5 was not doing any of the acts therein enumerated."

It is to be noted that the Act does not attempt to invalidate contracts of insurance entered into between citizens or residents of South Carolina and unauthorized insurers, but it does provide that insurers, not licensed to do business within the state in accordance with the state's rules there-

about and who are issuing and delivering policies of insurance to citizens or residents of the state, are subject to the jurisdiction of the courts of the state. The Act in effect says that an unlicensed insurer is doing business in the state when it issues or delivers a policy of insurance to a citizen or resident of the. state within the state, and that the . doing of such business is equivalent to the appointment of the State's Commissioner of Insurance as its true and lawful attorney upon whom lawful process may be served in any action, suit or proceeding arising out of any contract of insurance so issued or delivered by it in South Carolina. Furthermore an unauthorized insurer is protected to the extent that, when served with process, he may file a motion to quash or set aside such service upon any one of the three grounds stated in Section 7(c) of the Act. The defendant rests its motion squarely upon the ground that it has never done business in South Carolina. There is no contention that the defendant owns property or that it maintains offices and agents in the state.

I have little if any difficulty in reaching the conclusion that the cited Act of 1943 was designed and intended to apply to cases of the character now before the Court. In recent years there has been quite an extension of the so-called mail order insurance' business, and courts cannot be unmindful of the fact that, without such an Act, an insurer could say to an insured, or to his beneficiary, in case of a controversy respecting liability under a policy, that the issue between them could be settled in only one of two ways, first, by accepting the insurer's contention or, second, by suing the insurer in its own bailliwick. It takes little imagination to perceive that in such a situation the insured or his beneficiary would be at a distinct disadvantage, especially if the amount involved should be small and the distance great. The coercive influence of such an attitude on the part of an insurer in most cases would result in the insurer having its own way.

■ There is no indication that the Act was intended to restrict the right of contract or to abridge the right to pursue a legitimate business. Its primary purpose, in the light of the issue now before the Court is to afford to the parties to an insurance contract judicial facility for settling controversies concerning it without undue inconvenience to either party and "according to our traditional conception of fair play and substantial justice". The Act says that an insurer is amenable to the jurisdiction of the courts of the state if the insurer is engaged in transacting business in the state; and it in effect defines "transacting business" as the issuing or delivering of a policy or contract of insurance to a citizen or resident of the state within the state, which when accepted affords protection in the state to a citizen or resident thereof.

Broadly stated, the primary question for the Court's decision is whether the defendant, in the sense of the State's Uniform Unauthorized Insurers Act, was doing business in South Carolina when it issued to a citizen and resident of South Carolina a policy of insurance for delivery and acceptance in South Carolina, upon an application originating in said State, and which actually became effective in South Carolina by acceptance therein and afforded protection in said State to a citizen and resident thereof.

The application for insurance, dated April 12, 1945, contained a stipulation that the policy would not be in force until it was delivered to the insured. The policy actually was delivered to the insured in South Carolina by mail. The application also provided that the insured should have the right to reject the policy within seven days of its receipt. So the policy was not to take effect until the happening of two things, (1) its delivery and (2) its acceptance or non-rejection in South Carolina; and both things actually occurred in South Carolina. The policy is dated April 16, 1945. Its general character is stated at the top of the first page thereof in large black face type in these words, *"This Policy Provides Indemnity for Loss of Life, Limbs, Sight and Time by Accidental Means, and Loss of Time by Sickness to the Extent Hereinafter Limited and Provided."* Other relevant provisions read as follows:

"Standard Provisions

\*　　\*　　\*　　\*　　\*

"8. *The Company shall have the right and opportunity to examine the person of the Insured when and so often as it may reasonably require* during the pendency of the claim hereunder, and also the *right and opportunity to make an autopsy in case of death where it is not forbidden by law.*

"9. All indemnities provided in this policy for loss other than that of time on ac-

count of disability will be paid sixty days after receipt of due proof.

\*　　\*　　\*　　\*　　\*

"11. *Indemnity for loss of life* of the Insured is *payable to the Beneficiary* if surviving the insured. All *other indemnities* of this policy are *payable to the Insured.*

\*　　\*　　\*　　\*　　\*

"15. If any time limitation of this policy with respect to giving notice of claim or furnishing proof of loss is less than that permitted by *the law of the state in which the Insured resides at the time this policy is issued,* such limitation is hereby extended to agree with the minimum period permitted by such law.

\*　　\*　　\*　　\*　　\*

"General Provisions, Limitations and Reductions

\*　　\*　　\*　　\*　　\*

"(b) Refund of Premium—*If this policy is not satisfactory, it may be returned within one week from the date of issue* to the Home Office of the Company or to the office of the Company in which the policy was issued, *and any premium paid thereon will be refunded.* If not so returned, *the policyholder shall be deemed to have accepted the policy* and to have agreed to be bound by its terms, provisions and conditions.

\*　　\*　　\*　　\*　　\*

"(i) The insurance hereunder is granted in consideration of the representations made in the application, and of the payment in advance of a monthly premium of One Dollar ($1.00) or the annual premium of Eleven Dollars ($11.00) \* \* \*." (Emphasis added.)

The affidavit of G. Blair Heiser, Vice President of the defendant, offered in support of the motion, states in effect that the defendant has never been domesticated in South Carolina, or qualified under the laws of said State to transact business therein; that it has never transacted any business in South Carolina except through the use of the mail facilities of the United States government; that it has never maintained an office or place of business in South Carolina, or owned any property therein; that it has never maintained agents, solicitors or representatives for the transaction of its business within the State of South Carolina; that it does solicit and has solicited insurance contracts by advertisements in publications having a national circulation, including Grier's Almanac; that, as the result of an advertisement in said almanac, the defendant received through the United States mail an inquiry about its insurance contracts from the plaintiff whose address was Leesville, South Carolina, R. F. D. No. 1; that in response to said inquiry the defendant forwarded by mail to the plaintiff and his named beneficiary a printed form to be used in applying for insurance together with an invitation to fill out the application and return it to the insured; that further communications were mailed to the plaintiff and his beneficiary in South Carolina requesting the completion and return of the application for insurance; that on April 13, 1945, the defendant received through the mail at its agency office in the City of Elgin, King County, Illinois, a completed application for insurance, together with a remittance for the first month's premium; that thereafter, under date of April 16, 1945, the defendant prepared the policy of insurance now before the Court "wherein James Ira Storey of Leesville, South Carolina, RFD 1, was named as the insured, and Gladys Evelyn Storey was named as the beneficiary" and deposited the same "in the United States mails for transmission to said Gladys Evelyn Storey or to James Ira Storey"; and further that the defendant "does not now and has never transacted business in the State of South Carolina and is not now and has never been present in the State of South Carolina". This last statement obviously is a conclusion.

From the foregoing it may be stated that the application for insurance originated in South Carolina; that the policy, while presumably executed in Illinois on the part of the insured, was not to become effective until it was accepted by the insured, a citizen and resident of South Carolina, in South Carolina; that it was in contemplation of the parties that the insurance should obtain in South Carolina as a protection to the insured therein; that the obligation of the insurer to pay in case of loss was an obligation to pay in South Carolina at the residence of the insured or of his beneficiary as the case might be; and that the insurer had certain rights under the policy for its protection against unfounded claims which could be exercised only in South Carolina, such as the examination of the person of the insured, or the holding of an autopsy in case of the death of the insured. Furthermore the policy contemplated that South Carolina law would govern the holding of autopsies and certain time

limitations stated in the policy. See Standard Provisions 8 and 15 above quoted.

 I am of the opinion that the State in the exercise of its legislative power had the right, which it exercised in passing the Act in question, to define what acts occurring in the State would constitute the transacting of business therein so long as the definition was not arbitrarily unreasonable and did not do violence to the truth. The facts in this case are such as to constitute the transacting of business within the State in the sense of the State Act. The insurer constructively at least, assumed its policy obligations in South Carolina, and undoubtedly the parties to the contract contemplated that the insurer's obligations, when conditions arose requiring the performance thereof, would be performed in South Carolina. There is nothing in the policy contract evincing an intention or an expectation on the part of either of the contracting parties that the obligations assumed by the insurer would be performed, in the normal course of events, in any state other than the state of the residence of the insured and his beneficiary. As said in Lumbermen's Insurance Co. v. Meyer, 197 U.S. 407, at pages 416, 417, 25 S.Ct. 483, 485, 49 L.Ed. 8010:

"* * * The policy does not state in so many words where such payment is to be made, but it is a general rule that, in the absence of any such provision, or of any language from which a different inference may be inferred, the right of the creditor to demand payment at his own domicil exists, and it is the duty of the debtor to pay his debt to the creditor in that way. It is stated in the opinion of this court, by Mr. Justice Field, in Re State Tax on Foreign-held Bonds, 15 Wall. 300, 320, 21 L.Ed. 179, 187: 'All the property that can be in the nature of things in debts of corporations belongs to the creditors, to whom they are payable, and follows their domicil, wherever that may be. Their debts can have no locality separate from the parties to whom they are due. This principle might be stated in many different ways, and supported by citations from numerous adjudications, but no number of authorities, and no forms of expression, could add anything to its obvious truth, which is recognized upon its simple statement.' * * *

"In some other of the cases above cited, it is said the debtor need not follow the creditor out of the state where the contract was made in order to pay or make tender of payment of the debt. That depends upon the contract, and what inference of the place of payment may be drawn from its contents, when it does not state in so many words where payment is to be made. Where the debtor is a fire-insurance company, and makes such a contract as the policies in suit, and it is engaged in doing business by insuring property outside the state of its creation, and makes provision such as is made in this case for payment or for rebuilding or repairing, we think the place of payment in contemplation of the parties, and to be inferred from the facts set forth, is at the domicil of the creditor, in the state where the property insured was situated."

The defendant cites Boseman v. Connecticut General Life Ins. Co., 301 U.S. 196, 57 S.Ct. 686, 81 L.Ed. 1036, 110 A.L.R. 732, and International Shoe Co. v. State of Washington, etc., 66 S.Ct. 154, in support of its motion. The Boseman Case [301 U.S. 196, 57 S.Ct. 688] is inapplicable as the opinion in that case is predicated upon a state of facts that are consistently dissimilar to those in the instant case. In that case the policy of insurance was delivered in the State of Pennsylvania, and by its terms it was to be governed by the law of the State of Pennsylvania. It was a group insurance policy issued to the Gulf Oil Corporation in the State of Pennsylvania covering certain employees of that corporation. Boseman was one of the employees and resided in Texas. The Supreme Court said, "The sole question is whether the Pennsylvania law or the Texas law governs", and then proceeded to point ou the reasons why the Pennsylvania law governed the policy rather than the Texas law, among them that the contract provided specifically that Pennsylvania law should govern and that the contract was not one between the Insurance Company and the claimant Boseman but one between the claimant's employer Gulf Oil Corporation and the Insurance Company which was entered into between them in the State of Pennsylvania.

The International Shoe Company case [66 S.Ct. 156] was one in which the State of Washington sought to recover "unpaid contributions to the state unemployment compensation fund exacted by state statutes". Mr. Chief Justice Stone in the leading opinion in that case stated the contentions of the appellant in this language:

"Appellant's argument, renewed here, that the statute imposes an unconstitutional burden on interstate commerce need not detain us. * * *

"Appellant also insists that its activities within the state were not sufficient to manifest its 'presence' there and that in its absence the state courts were without jurisdiction, that consequently it was a denial of due process for the state to subject appellant to suit. It refers to those cases in which it was said that the mere solicitation of orders for the purchase of goods within a state, to be accepted without the state and filled by shipment of the purchased goods interstate, does not render the corporation seller amenable to suit within the state. * * * And appellant further argues that since it was not present within the state, it is a denial of due process to subject it to taxation or other money exaction. It thus denies the power of the state to lay the tax or to subject appellant to a suit for its collection."

The Court then went on to uphold the right of the State of Washington to exact contributions from the defendant and to enforce such exactions in the courts, of that state, using in part this language: "Historically the jurisdiction of courts to render judgment in personam is grounded on their de facto power over the defendant's person. Hence his presence within the territorial jurisdiction of a court was prerequisite to its rendition of a judgment personally binding him. Pennoyer v. Neff, 95 U.S. 714, 733, 24 L.Ed. 565. But now that the capias ad respondendum has given way to personal service of summons or other form of notice, due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional motions of fair play and substantial justice.' "

Also:

"It is evident that the criteria by which we mark the boundary line between those activities which justify the subjection of a corporation to a suit, and those which do not, cannot be simply mechanical or quantitative. The test is not merely, as has sometimes been suggested, whether the activity, which the corporation has seen fit to procure through its agents in another state, is a little more or a little less. St. Louis S. W. R. Co. v. Alexander, supra, 227 U.S. [218] 228, 33 S.Ct. [245] 248, 57 L.Ed. 486, Ann.Cas.1915B, 77; International Harvester Co. v. [Commonwealth of] Kentucky, supra, 234 U.S. [579] 587, 34 S.Ct. [944] 946, 58 L.Ed. 1479. Whether due process is satisfied must depend rather upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure. That clause does not contemplate that a state may make binding a judgment in personam against an individual or corporate defendant with which the state has no contacts, ties, or relations. Cf. Pennoyer v. Neff, supra; Minnesota Ass'n v. Benn, 261 U.S. 140, 43 S.Ct. 293, 67 L.Ed. 573.

"But to the extent that a corporation exercises the privilege of conducting activities within a state, it enjoys the benefits and protection of the laws of that state. The exercise of that privilege may give rise to obligations; and, so far as those obligations arise out of or are connected with the activities within the state, a procedure which requires the corporation to respond to a suit brought to enforce them can, in most instances, hardly be said to be undue. * * *"

In the instant case the defendant actually did business in South Carolina; it assumed obligations to be performed in that State, and it acknowledged its accountability to state law in the policy contract. The defendant's alleged obligations in this case, if they exist, grow out of the contract which was entered into in this State and, by the terms of the contract, the defendant is bound to perform those obligations in this State. Such obligations as the defendant assumed under the policy arose by reason of the delivery of the policy in this State to a resident thereof for acceptance therein and its actual acceptance by the insured in this State; and the happening of the conditions which make the defendant liable under the policy, if they do make it liable, are conditions which occurred in this State.

Perhaps the case of Minnesota Commercial Men's Association v. Benn, 261 U.S. 140, 43 S.Ct. 293, 294, 67 L.Ed. 573, is more directly in point than the ones previously cited, but it does not, as I apprehend, support the defendant's contention. In that case the controlling feature seems to have been, as expressed by the Court, "that the agreement incident to membership is a

Minnesota contract, there made and to be performed." The insurer was "a mutual assessment, accident, and health insurance company, incorporated under the laws of Minnesota." The by-laws of the association required all applications for membership in the association, upon which insurance depended, to be approved by the Board of Directors of the Association at its home office in the State of Minnesota. If an application for membership was approved a certificate of membership was issued at the home office and mailed to the member. There was no condition that the certificate would become effective only when accepted in another state by the member. Furthermore, all dues and assessments were required to be paid at the home office of the association and apparently all losses were payable there too. Such facts are decidedly at variance with the facts in the instant case. In the instant case the policy of insurance was mailed to South Carolina for acceptance and retention there, and it in fact was accepted and retained by the insured in South Carolina. Moreover, losses under the policy were payable in South Carolina where the insured and his beneficiary reside.

For the reasons stated I am of the opinion that the defendant's motion to quash, vacate and set aside the service of the summons and complaint in this action should be denied. An appropriate order will be entered to carry this conclusion into effect.