248 F.2d 367
 Mario FLORIO, a Minor, by His Next Friends and Natural
Parents, Cesare Florio and Mary Florio, and Cesare
Florio and Mary Florio in Their Own
Right, Appellants,
v.
POWDER POWER TOOL CORP.
 No. 12127.
 United States Court of Appeals Third Circuit.
 Argued June 4, 1957.
Decided Sept. 12, 1957, As Amended Oct. 30, 1957.
 
 William M. Alper, Philadelphia, Pa. (Freedman, Landy & Lorry, Philadelphia, Pa., on the brief), for appellants.
 Peter P. Liebert, 3rd, Philadelphia, Pa. (John J. McDevitt, 3rd, Philadelphia Pa., on the brief), for appellee.
 Before BIGGS, Chief Judge, and GOODRICH and KALODNER, Circuit Judges.
 BIGGS, Chief Judge.
 
 
 1
 The suit at bar, based on diversity and jurisdictional amount, was brought by the minor plaintiff, Mario Florio, by his parents as his next friends, against the appellee Powder Power Tool Corp. (Powder Power), an Oregon corporation. On December 4, 1954 Florio, while employed as a carpenter on a construction project, was seriously injured when a tool powered by powder, manufactured by Powder Power, used by one of Florio's fellow workers, misfired, causing a steel stud to ricochet from a steel beam and imbed itself in Florio's brain. Florio in his complaint alleges that Powder Power was negligent in the design and manufacture of the tool causing it to be 'dangerous, unsafe, and defective.' Service was made upon Powder Power by serving the Secretary of the Commonwealth of Pennsylvania as required by the Pennsylvania Business Corporation Law and Rule 4(d)(7), F.R.Civ.Proc., 28 U.S.C. validating service of process on a foreign corporation made in accordance with a State statute. Powder Power moved to dismiss, alleging that it was not doing business in Pennsylvania and therefore could not lawfully be served with process. The court below granted Powder Power's motion, 1956, 148 F.Supp. 843, and the appeal at bar followed.[1]
 
 
 2
 The case involves the two questions referred to in our decision in Partin v. Michaels Art Bronze Co., Inc., 1953, 202 F.2d 541, 542.[2] The first question is: Were the activities of Powder Power in Pennsylvania such as to fall within the purview of the Pennsylvania statute set out below? The second question, assuming the first to be answered in the affirmative, is whether the assertion of jurisdiction under such circumstances is permissible under Article 1, Section 8, Clause 3, the Commerce Clause, or in view of the Fourteenth Amendment of the Constitution of the United States?
 
 
 3
 We must look here to State law because of Rule 4(d)(7), F.R.Civ.Proc., 28 U.S.C.[3] There is no applicable federal statute. The Pennsylvania Act of September 26, 1951, P.L. 1457, 22, 15 P.S.Pa. 2852-1011, as amended,[4] in pertinent part provides: 'B. Any foreign business corporation which shall have done any business in this Commonwealth, without procuring a certificate of authority to do so from the Department of State, shall be conclusively presumed to have designated the Secretary of the Commonwealth as its true and lawful attorney authorized to accept, on its behalf, service of process in any action arising out of acts or omissions of such corporation within this Commonwealth. (and) c. * * * the entry of any corporation into this Commonwealth for the doing of a series of similar acts for the purpose of thereby realizing pecuniary benefits or otherwise accomplishing an object, or doing a single act in this Commonwealth for such purpose with the intention of thereby initiating a series of such acts, shall constitute 'doing business."[5]
 
 
 4
 We have been able to find but two cases in which Pennsylvania courts have dealt directly with these amended sections. One of these was a decision by the Court of Common Pleas of Washington County; the other, a decision by the County Court of Allegheny County. While not binding on this court or the court below, Eckman v. Baker, 3 Cir., 1955, 224 F.2d 954, 956, they are nonetheless indicative of what the law of Pennsylvania may be. In Ramey v. Donora Southern R.R. Co., 1956, 37 Wash.Co.R., Pa., 70, a foreign corporation claimed that mere solicitation of business did not constitute the doing of business under Pennsylvania law as enunciated in Shambe v. Delaware Hudson Railroad Co., 1927, 288 Pa. 240, 135 A. 755 and in Lutz v. Foster and Kester Company, Inc., 1951, 367 Pa. 125, 79 A.2d 222. The Lutz decision held that the corporation must have an agent in the Commonwealth who had authority 'to bind' the corporation to contracts or other engagements as contrasted with the mere solicitation of contracts or engagements. This is frequently called the 'solicitation plus' doctrine; sometimes, the 'other activities' standard. The Court of Common Pleas of Washington County made it clear that since both of these cases were decided under the Act of 1851, P.L. 353, 12 P.S.Pa. 1310, the rule of the two decisions cited was not applicable since the public policy of Pennsylvania had been changed by the 1951 amendments to the Pennsylvania Corporation Law. The Court stated: 'It is clear * * * that the amendment of 1951 was a proper declaration of public policy on the part of our Legislature and was enacted to overcome the effect of the rules laid down in the case of Shambe v. Delaware Hudson Railroad Co. (and Lutz v. Foster and Kester Company, Inc.).'
 
 
 5
 The other decision is Motch & Merryweather Machinery Company v. Pittsburgh School District, emanating from the County Court of Allegheny County, 1952, No. A-1305, (not reported for publication). The dicision involved a Pennsylvania statute permitting local taxation of dealers and vendors. The court directed its attention solely to the issue of whether the taxpayer was doing business in Pittsburgh. The court refused to apply the 1951 amendments with which we are concerned because it was of the view that these amendments were intended by the legislature to apply only to cases involving service of process. The court said: 'It is well to point out that the service of process act deals with procedural limitations, whereas tax statutes deal with substantive rights, and Pennsylvania has a higher requirement for doing business when applied to a tax statute as compared to doing business by a foreign corporation for the purpose of service of process.' Having thus determined the inapplicability of the 1951 amendments to tax statutes, the court made its determination under the 'solicitation plus' rule as laid down in the Lutz and Shambe cases. On appeal, without commenting on the applicability of the 1951 amendments, the Supreme Court of Pennsylvania affirmed the decision of the county court of Allegheny County, holding that under the 'Lutz doctrine' the defendant corporation was not doing business. Motch & Merryweather Machinery Co. v. Pittsburgh School District, 1955, 381 Pa. 619, 116 A.2d 733.
 
 
 6
 Other decisions by Courts of Common Pleas of Pennsylvania are not really helpful though they suggest that the 1951 amendments may have modified the prior case law. The courts decided these cases under the restrictive Lutz doctrine of 'solicitation plus,' and did not apply the 1951 amendments. Creval v. Duquesne Motor Coach Lines, 1955, 103 Pittsb.Leg.J., Pa., 124; Cieri v. Dante Importing Company, 1955, 54 Lack.Jur., Pa., 33. Since there has been no direct determination by the appellate tribunals of Pennsylvania as to the scope of the 1951 amendments, that issue must be determined here. Cf. the decision of the Supreme Court of Pennsylvania in Motch & Merryweather Machine Co. v. Pittsburgh School District, supra.
 
 
 7
 There is no pertinent legislative history to aid us in this task. Of necessity therefore our determination must depend in part at least on the economic background and other pertinent circumstances which caused the Pennsylvania Legislature to enact these amendments to the Pennsylvania Corporation Law. We may take judicial notice that scientific and economic developments, coupled with vastly increased facilities for travel and communication, have so enlarged corporate activity that State lines have been largely effaced for many purposes. Obviously the law must grow with the economic developments of the country which it seeks to serve and extensions of jurisdiction have been effected both by judicial decision and by legislative enactment. The primary issue, in respect to which State authorities are not controlling, is whether a State statute's definition as to what constitutes doing business in the State meets reasonably the criteria of 'fair play and substantial justice' as stated by Mr. Chief Justice Stone in International Shoe Company v. State of Washington, 1945, 326 U.S. 310, 66 S.Ct. 154, 160, 90 L.Ed. 95. The Supreme Court of the United States had held earlier in Green v. Chicago, Burlington & Quincy R. Co., 1907, 205 U.S. 530, 27 S.Ct. 595, 51 L.Ed. 916, that solicitation alone was not sufficient to constitute doing business. In International Shoe Company it was stated that each case must be decided on its own facts and that there is jurisdiction if the corporation is carrying on business in such a sense as to manifest its presence to a substantial degree in the State.
 
 
 8
 It will be observed that the law is being developed to meet the needs of changing economic and commercial conditions and that less attention is being paid to semantics and more to business realities. Judge Lord has ably traced this development in Kulicke v. Rollway Bearing Co., D.C.E.D.Pa.1955, 131 F.Supp. 572. See also Frene v. Louisville Cement Co., 1943, 77 U.S.App.D.C. 129, 134 F.2d 511, 514, 146 A.L.R. 926;[6] 34 California Law Rev. 351, and 16 U. of Chi.L.Rev. 523. Cf. Woodworkers Tool Works v. Byrne, 9 Cir., 1951, 191 F.2d 667. In our opinion the 1951 amendments to the Pennsylvania Corporation Law are a clear exercise by the Commonwealth of Pennsylvania of its power to declare what comprises the 'doing of business' within Pennsylvania and was intended to divorce the Commonwealth from the 'solicitation plus' doctrine of the Lutz decision and to bring its law into line with the general trend of a wider assertion of power by a State over nonresidents and foreign corporations. Sunbury Wire Rope Manufacturing Company v. United States Steel Corporation, 3 Cir., 1956, 230 F.2d 511;[7] Kulicke v. Rollway Bearing Company, Inc., supra; and Solt v. Interstate Folding Box Co., D.C.E.D.Pa.1955, 133 F.Supp. 7.
 
 
 9
 Having determined the intent of the 1951 amendments it is necessary next to determine whether the operative facts of the case at bar are such as to compel a determination that Powder Power's operations or activities in Pennsylvania were of such a nature that it was doing business within the purview of the Pennsylvania Corporation Law as amended.
 
 
 10
 As we have stated, Powder Power was incorporated under the laws of Oregon. At no time has it been licensed to do business in Pennsylvania, nor has it appointed an agent for the service of process in Pennsylvania. It has no office within the State; nor does it maintain any records or bank accounts within the State. In May of 1949 Powder Power entered into an exclusive territorial contract to be operative in Pennsylvania under whih General Equipment Co. was to be the sole distributor of Powder Power tools in the area. This contract continued into 1955, when Powder Power entered into a substantially similar contract with Pennsylvania Equipment and Tool Company. These territorial contracts were rigidly restrictive in nature. By their terms the respective distributors agreed to make sales and render services according to the recommendations of Powder Power and to make such sales only within the prescribed territory.
 
 
 11
 The distributors were restricted from manufacturing, selling, or dealing in other similar tools and were required to purchase all additional necessary parts from Powder Power. All prices and discounts were strictly governed by Powder Power and all orders for products which Powder Power received from the respective distributors were subject to approval and acceptance of Powder Power. The distributors were required to maintain amounts of unimpaired working capital as Powder Power in its discretion deemed proper. Powder Power also had the right to demand additional capital investment within its discretion. The distributors were required to provide themselves with liability insurance for protection against property damage and bodily injury caused by defects in Powder Power's products distributed by them. Powder Power completed its coercive pattern by stipulating for itself a unilateral right to terminate the contracts with the distributors if they did not promote business to the satisfaction of Powder Power or failed to meet the sales quotas which it at its will had an absolute right to establish or alter.
 
 
 12
 There is more. A series of acts for the purpose of realizing pecuniary benefit were conducted in Pennsylvania by Powder Power. A regional representative directly employed by Powder Power came into the Commonwealth with such regularity that his activities therein were considered by the President of Powder Power to constitute a 'continuing process.' While in Pennsylvania Powder Power's representative instructed the distributors and their respective personnels in the sale and distribution of Powder Power's products. The representative also made adjustments and repairs of equipment for the distributors and for purchasers from the distributors. These services were considered a necessary part of the representative's duties. It is obvious that the regional representative's activities were conducted for one purpose-- to encourage the use and stimulate the sales of Powder Power's tools. Such activity was, at least, a part of a systematic scheme of sales promotion and as such clearly fell within the statutory requirements of a series of acts for pecuniary benefit. See Dufek v. Roux Distributing Co., D.C.S.D.N.Y. 1954, 125 F.Supp. 716; Cone v. New Britain Machine Co., 6 Cir., 1927, 20 F.2d 593, certiorari denied 1927, 275 U.S. 552, 48 S.Ct. 115, 72 L.Ed. 421, and Case v. Mills Novelty Co., 1940, 187 Miss. 673, 193 So. 625, 126 A.L.R. 1102.
 
 
 13
 Section 1011, subd. C. provides that the entry of a foreign corporation into Pennsylvania and the performance of a single act within the Commonwealth with the intention of initiating a series of acts in the State designed for pecuniary benefit shall constitute the 'doing of business.' The execution of the two distributors' contracts on the present record can be deemed to be such acts. The record does not show where the contracts between Powder Power and its distributors were executed but these contracts must be assumed to have been executed in Pennsylvania. Compare Black & Yates v. Mahogany Ass'n, 1942, 129 F.2d 227, 233, 148 A.L.R. 841.[8] We can find no Pennsylvania decision squarely in point but we are of the opinion that the Pennsylvania appellate courts would adopt this salutary rule particularly when an action has been terminated on a motion to dismiss.[9]
 
 
 14
 That a distributor's contract executed in a State is a factor in determining the extent of a foreign corporation's activities in a State is self-evident, not primarily because the series of acts contemplated is the shipment of goods into the State through channels of interstate commerce but because of the nature of the contract which may be so restrictive that the foreign corporation may exercise a substantial control over the business of the local distributor and thereby bring itself within the State's jurisdiction. Kahn v. Maico Company Inc., 4 Cir., 1954, 216 F.2d 233; La Porte Heinekamp Motor Co. v. Ford, D.C.1928, 24 F.2d 861; Thomas v. Hudson Sales Corp., 1954, 204 Md. 450, 105 A.2d 225. In our opinion the nature of the relationship between manufacturer and distributor created by the contract is of much greater importance than the factor of the actual place of execution of the agreement particularly where goods have flowed into the State by reason of the contract. The first part of subsection C provides that the entry of a corporation into the Commonwealth for the doing of a series of similar acts for the purpose of pecuniary profit may be construed as 'doing business' in the Commonwealth. If we are correct in this conclusion it would follow, place of execution of the distributors' contracts aside, that Powder Power was doing business in Pennsylvania within the purview of the Pennsylvania Corporation Law.
 
 
 15
 In a case very similar to that at bar, Carroll Electric Co. v. Freed-Eisemann Radio Corporation, 1931, 60 App.D.C. 228, 50 F.2d 993, 994, Mr. Chief Justice Martin stated: 'The terms of the contract between the parties have the effect of creating a limited agency in the distributor * * *. The distributor was not an independent merchant dealing with the manufacturer upon its own initiative, but conducted its business in the District of Columbia in conformity with the stipulations contained in the contract. The activities thus provided for constituted the transaction of business by both parties not only in New York City, where the contract was made, but also in the District of Columbia, within which it was in part carried out. * * * Toledo Computing Scale Co. v. Miller, 38 App.D.C. 237; Hoffman v. Washington-Virginia Railway Co., 44 App.D.C. 418; Eastman Kodak Co. of New York v. Southern Photo Metals Co., 273 U.S. 359, 47 S.Ct. 400, 71 L.Ed. 684.'
 
 
 16
 Powder Power argues that service under Section 1011, subd. B. was invalid since that section authorizes service only in those cases where the cause of action arises 'out of acts or omissions of such corporation within this Commonwealth.' Powder Power contends that the act to which the court must look to confer jurisdiction under the Pennsylvania statute was the negligent manufacture of the defective tool and that since it was manufactured in Oregon there was no act cognizable by the statute occurring in Pennsylvania. To support this contention Powder Power relies on Johns v. Bay State Abrasive Product Co., D.C.Md.1950, 89 F.Supp. 654. In that case a foreign corporation shipped a defective grinding wheel into the State of Maryland, which shattered when used causing an injury. Service was made upon the Massachusetts corporation under a statute, Section 111, art. 23, Flack's Annotated Code, 1947 ed., which authorized service against a foreign corporation for negligent acts 'done' within the State whether or not the foreign corporation was doing business in Maryland. The court determined that since there was no negligent act committed or occurring within the State, to apply the statute to the facts presented would violate due process. The case at bar, however, is clearly distinguishable. While the Maryland statute required the negligent act to have been done within the State in order to obtain jurisdiction of a foreign corporation, the Pennsylvania statute has as a condition precedent to its operation a finding that the foreign corporation 'shall have done any business in this Commonwealth.' Jurisdiction in the Commonwealth of Pennsylvania was conferred, as we have pointed out, by a series of acts committed within that State looking to the sale of tools for Powder Power's pecuniary benefit.
 
 
 17
 If this be so-- and we think it is-- we cannot believe that the Pennsylvania Legislature, possessing the clear intent to increase the protection of its citizens by enlarging the jurisdiction of the courts of the Commonwealth over foreign corporations, would militate against this purpose by abandoning the unbroken line of authority which localizes the tort to the place where the last event necessary to make an actor liable, the injury, actually occurred. We must conclude, in the absence of legislative history to the contrary, that it was the intent of the Pennsylvania Legislature to regard an injury flowing from the careless manufacture of an instrumentality as the act veritably contemplated by subsection B. Restatement, Conflicts, Section 377; Mike v. Lian, 1936, 322 Pa. 353, 185 A. 775; Openbrier v. General Mills, Inc., 1940, 340 Pa. 167, 16 A.2d 379; Stumberg, Principles of Conflict of Laws 165-168 (1937); 2 Rabel, The Conflict of Laws: A Comparative Study 300-303 (1947); Goodrich, Conflicts 263-264 (1949); 133 A.L.R. 260. To place the narrow construction on the amendments sought by Powder Power would defeat their purpose. As we have indicated, the purpose of the amendments was to make foreign corporations suable as extensively as possible in Pennsylvania. See note 6, supra. We cannot accept Powder Power's contention in this connection.
 
 
 18
 We answer the first question involved in the instant case by stating that it is our opinion that Powder Power was 'doing business' in the State of Pennsylvania within the purview of the Pennsylvania Corporation Law. We conclude that the Supreme Court of Pennsylvania would so hold.
 
 
 19
 We come now to the second question involved in the instant case: whether the application of the Pennsylvania statute to Powder Power which may render it liable for damages in an in personam action is unconstitutional either under Article 1, Section 8, Clause 3, the Commerce Clause, or under the Fourteenth Amendment to the Constitution of the United States. We are not sure how seriously Powder Power advances its constitutional argument. State statutes authorizing in personam suits against foreign corporations doing business within the States have been so frequently passed upon and held to be constitutional as to leave small basis for a conclusion that the statute at bar which is typical, is objectional in its terms. International Harvester v. Commonwealth of Kentucky, 1913, 234 U.S. 579, 34 S.Ct. 944, 58 L.Ed. 1479; Shipper's Pre-Cooling Service v. Macks, 5 Cir., 1950, 181 F.2d 510, and cases cited therein. This is true whether the statute be tested in the light of the Commerce Clause or in that of the Fourteenth Amendment. Powder Power makes no sharp differentiation in its argument based on the two respective constitutional provisions. We can make none.
 
 
 20
 To hold under the operative facts of the case at bar that Powder Power may be subjected constitutionally to an in personam judgment would by no means be a farthest North expression of judicial opinion. It is interesting to note that many State legislatures have gone farther than that of Pennsylvania and that in construing these statutes many courts, including the supreme Courts of several States, have gone farther than the Supreme Court of the United States.[10] It is clear that the Supreme Court of the United States itself has compelled the discarding of jurisdictional shibboleths in this very field. The restrictive nature of Powder Power's territorial sales contracts, coupled with the continuous activities of its representative in Pennsylvania 'make it reasonable, in the context of our federal system of government, to require the corporation to defend the particular suit which is brought here.' International Shoe Company v. State of Washington, supra. Justice, in our view, requires that Powder Power stand suit in Pennsylvania. The injury occurred in Pennsylvania. The witnesses to the accident are available in that State. The hospital and other medical records are kept in Pennsylvania and it is where Florio and his next friends reside. Gulf Oil Corporation v. Gilbert, 1946, 330 U.S. 501, 508, 67 S.Ct. 839, 91 L.Ed. 1055.[11] To permit Florio to maintain a suit against Powder Power in Pennsylvania comports with our traditional notions of fair play and substantial justice. International Shoe Company v. State of Washington, supra; Perkins v. Benguet Consolidated Mining Company, 1952, 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485.
 
 
 21
 The judgment of the court below will be reversed.
 
 
 
 [1]
 The Pennsylvania distributor of Powder Power's tools, General Equipment Co., a Maryland corporation was also named as a defendant but, as that corporation concededly was doing business in Pennsylvania it did not contest service. It filed an answer on the merits
 
 
 [2]
 The statute with which we are concerned in the instant case and quoted hereinafter was not discussed in the cited case
 
 
 [3]
 Rule 4(d)(7) provides: 'Upon a defendant of any class referred to in paragraph (1) or (3) of this subdivision of this rule, it is also sufficient if the summons and complaint are served in the manner prescribed by any statute of the United States or in the manner prescribed by the law of the state in which the service is made for the service of summons or other like process upon any such defendant in an action brought in the courts of general jurisdiction of that state.'
 
 
 [4]
 The Act of September 26, 1951, P.L. 1457, amended the Pennsylvania Corporation Law in the particular with which we are concerned in this opinion. See subparagraph C., 15 P.S.Pa. 2852-1011. The subsequent amendment, that effected by the Act of August 19, 1953, P.L. 1119, 10, changed subparagraph B, but did nothing more than embody in a statute what had previously been the law in respect to bringing suits in United States District Courts. See 15 P.S.Pa. 2852-1011, subparagraph B. and subparagraph C
 
 
 [5]
 The Act of September 26, 1951, as amended, supra, note 4, has been further amended by Act No. 370, effective September 1, 1957, by the deletion of subparagraph C. This amendment does not affect the case at bar. As process was served upon Powder Power pursuant to the 1951 Act, its validity must be determined in light of that Act
 
 
 [6]
 The contrary view, that the corporation was not 'doing business' in the District of Columbia, was well expressed by the late Chief Judge Harold M. Stephens. See 134 F.2d at pages 519 et seq
 
 
 [7]
 In Sunbury Wire this court stated, 230 F.2d at page 514, referring to 15 P.S.Pa. 2582-1011, subd. B., 'The intent of the Pennsylvania Business Corporation Law seems rather to be that foreign corporations doing business within the state shall submit to the jurisdiction of federal as well as state courts in all types of cases within their respective jurisdictions.'
 
 
 [8]
 We stated in Black & Yates, 129 F.2d at page 233: 'We think that in the absence of allegations as to the place or places where the acts complained of occurred, the court below would have been entitled to assume that these operative facts took place within the State of Delaware. As to substantive rights the cases are clear that the rules of substantive law to be applied in a federal equity court in a diversity case are those which would be applied in a state court sitting in the same state. This is a logical and indeed necessary extension of the principle of Erie R. Co. v. Tompkins, supra (304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188). See Ruhlin v. New York Life Ins. Co., 304 U.S. 202, 205, 58 S.Ct. 860, 82 L.Ed. 1290; New York Life Ins. Co. v. Jackson, 304 U.S. 261, 58 S.Ct. 871, 82 L.Ed. 1329, and Rosenthal v. New York Life Insurance Co., 304 U.S. 263, 58 S.Ct. 874, 82 L.Ed. 1330. Nothing contained in Russell v. Todd, 309 U.S. 280, 60 S.Ct. 527, 84 L.Ed. 754, or in West v. American T. & T. Co., 311 U.S. 223, 61 S.Ct. 179, 85 L.Ed. 139, 132 A.L.R. 956, indicates the contrary.'
 
 
 [9]
 We note also that Florio's brief states that the distributors' contracts were executed in Pennsylvania and that this statement has not been denied by Powder Power
 
 
 [10]
 A partial list of the statutes and decisions follows: Md.Code Ann., Art. 23, sec. 88(d) (Flack 1951) (tort committed within State or contract made within State), applied and upheld, Johns v. Bay State Abrasive Wheel Corp., D.C.D.Md.1950, 89 F.Supp. 654 (tort), Compagnia De Astral v. Boston Metals Co., 1954, 205 Md. 237, 107 A.2d 357 (contract); N.Y.Insurance Law, 59-a(2) (a) (McKinney's Consol.Laws, c. 28) (delivery of insurance policy within State), applied and upheld, Zacharakis v. Bunker Hill Mut. Ins. Co., 1st Dept.1953, 281 App.Div. 487, 120 N.Y.S.2d 418; S.C.Code Ann. 37-265 (1952) (delivery of insurance policy within State) applied and upheld, Storey v. United Ins. Co., D.C.E.D.S.C.1946, 64 F.Supp. 896; Tenn. Code Ann. 56-319(4) (1955) (doing in this State any act whatsoever), applied and upheld in Schutt v. Commercial Traveler's Mutual Accident Ass'n, 2 Cir., 1956, 229 F.2d 158; Va.Code Ann. 13-139 (1950) (advertising securities within State), upheld, Travelers Health Association v. Commonwealth of Virginia ex rel. State Corp. Commission, 1950, 339 U.S. 643, 70 S.Ct. 927, 94 L.Ed. 1154; Vt. State Rev. 1562 (1947) (tort committed within State; contract to be performed within State), applied and upheld, Smyth v. Twin State Improvement Corp., 1951, 116 Vt. 569, 80 A.2d 664
 
 
 [11]
 See the doctrine of forum non conviens and Section 1404, Tit. 28, U.S.C