## Jackson *v.* Hillerson, Appellant.

*Malicious prosecution—Evidence—Finding of lost goods—Larceny as bailee.*

1. Whether certain facts constitute probable cause in an action for malicious prosecution, must be determined by the court; but whether such alleged facts exist, is for the jury to find. Where the facts are in controversy the subject must be submitted to the jury, in which event it is the duty of the court to instruct them what facts will constitute probable cause, and submit to them only the question of such facts.

*Trial—Expression of charge—Expression of opinion by trial judge.*

2. Exceptional cases arise where it is the duty of the trial judge to express his opinion of the facts and guide the minds of the jury to a correct view of the evidence, and therefore it has been settled that when he does so, without misleading or controlling them, in the disposition of the facts, there is no error for reversal.

Argued Dec. 17, 1914. Appeal, No. 172, Oct. T., 1914, by defendants, from, judgment of C. P. No. 4, Phila. Co., March T., 1913, No. 4,786, on verdict for plaintiff

in case of Joseph W. Jackson v. David Hillerson and
Theodore M. Boyer.     Before RICE, P. J., ORLADY,
HEAD, KEPHART and TREXLER, JJ.     Affirmed.

Trespass for malicious prosecution.     Before AUDEN-
RIED, J.

At the trial it appeared that on March 20, 1913, the
plaintiff found in the office of the Northwestern Trust
Company of Philadelphia, a paper package containing
forty uncut diamonds.     There was no evidence that the
plaintiff knew to whom they belonged.     He took them
home, and two days afterwards seeing an advertise-
ment of the loss of the diamonds in a paper, he com-
municated with Hillerson, the defendant, and arranged
for a meeting at the plaintiff's residence.     Hillerson
accompanied by Boyer, a city detective, went to plain-
tiff's house, and a disagreement having arisen as to the
advertised reward, plaintiff refused to give up the
diamonds at that time.     Subsequently plaintiff was
arrested on a warrant sworn out by Boyer, but at the
hearing he was discharged.

[If you think that these two men who are made de-
fendants here, combined to bring about Jackson's
arrest, the next question to which you must direct your
attention is the question whether Jackson was guilty
of the offense of larceny as bailee of these diamonds,
or of any other offense against the criminal law in con-
nection with them.     For I charge you that if this man
was not guilty of stealing the diamonds, not guilty of
larceny as bailee of them, not guilty of larceny of them,
then if he was an innocent man with respect to these
diamonds but nevertheless was arrested, there is a serious
question as to whether or not his arrest, he being in-
nocent, was not malicious.     The gist of the action with
which we are concerned here is the malice with which
he was arrested.     If he was innocent, and there was no
probable cause which excused his arrest, you would be
justified in finding that those who were concerned in

making the arrest acted maliciously, and that they are therefore responsible to answer to him in damages for the wrong that he sustained. Now was he guilty of any crime with respect to these diamonds? He tells you, and of course I have to leave this to you to say whether it is true or not, that when he went to make a deposit in the Northwestern Trust Company, about five minutes before three o'clock on the afternoon of March 20, which was Thursday, his foot knocked against a package on the ground. The covering about the articles that the package contained was tissue paper. He stopped down, and picked it up, but gave it little or no attention at the time. It had no name on it, it had nothing about it to indicate who had dropped it or how it happened to be on the floor. He put it in his pocket and took it home and showed it to his wife. When they opened the package together they discovered that it contained forty diamonds. Whether those diamonds were of good quality or not is not particularly important. Jackson says he mistook them for topazes. He turned them over to his wife with the remark, "I guess I found some jewelry for you," or something of that sort. Nobody contradicts Jackson in what he says as to the manner in which the diamonds came into his possession. If what he says is to be believed he found these articles. Now the law in relation to larceny by the finder of lost goods is this. The appropriation of lost goods by the finder thereof may be larceny, as in other cases of the taking by one person of the goods of another with felonious intent, because the owner of the goods is not divested of his right of property by the loss of it at any place, and having a right of property is regarded by law as constructively in possession notwithstanding the loss But in order to make out a case of guilt under such circumstances there must be at the time of the finding both an intent to appropriate, and knowledge or means of knowledge as to who the owner of the goods is. The finder of lost goods is guilty of larceny in appropriating

them to his own use only in case he knew or had the means of knowing at the time he took possession who the owner was.  If he had not such knowledge or means of knowledge it is immaterial that he intended from the very first to appropriate the goods found by him, or that he retained them after the owner became known to him.  He is then liable only civilly for trover and conversion of the property.  Before you can say that Mr. Jackson was a thief, and that he committed larceny of the goods, i. e., of the diamonds with which we are concerned in this case, it is necessary that you should be satisfied that he knew, or had means of knowing, who owned these diamonds; not on March 24, nor even on March 22, when he read the advertisement in the "Bulletin" about them, but at the time he picked them up in the office of the Northwestern Trust Company. And not only that, but before you can say that he is a thief and stole these goods you must be satisfied that at the time he picked them up he not only knew their owner, or had the means of ascertaining who their owner was, but that he had the intent to appropriate them, at that very moment, to his own use.  And if you are not satisfied of the presence of such an intent, or such knowledge, on his part, then he was not guilty of larceny, still less of larceny as bailee, there being no evidence whatever before you that the goods were ever put in his hands as bailee.  As I have said, we have nothing before us in this case except Mr. Jackson's story as to the time, place and circumstances under which these diamonds came into his possession.  Nobody contradicts what he says on this subject.  He tells you that the diamonds were contained in a package of tissue paper.  There is no evidence that that tissue paper had any name or distinguishing mark upon it. There is no evidence that at the time Mr. Jackson picked that package up Mr. Hillerson was anywhere near by.  Will you say that this man is a thief, say that he is guilty of larceny, or of larceny as bailee?  I have

to leave that question to you. But I must confess that upon the evidence which is before me if I was in the jury box I would be very much indisposed to find that this man was not innocent with respect to these diamonds. If you think that the circumstances were such that on the evidence you can say that Mr. Jackson was guilty of stealing the diamonds, then your verdict ought to be in favor of the defendants.] [1] If you think, however, that he was not guilty of any crime with respect to them, then there are other questions for you to consider before you can properly dispose of this case. If Jackson's taking of the diamonds was innocent, the defendants would not have been justified in arresting him, unless there was in the circumstances connected with the matter probable cause which would serve as an excuse for their suspicion of crime on his part. [Now was there probable cause here? The probable cause upon which the defendants rely to justify Jackson's arrest consists in the advice received by Boyer from Magistrate Gorman. Mr. Gorman at the time Mr. Boyer interviewed him in the evening of March 24, 1913, upon this subject was a magistrate assigned to duty in the Central Station House. And he was not only a magistrate but he was and still is a member of the bar. Mr. Boyer says that he consulted with Magistrate Gorman, and Magistrate Gorman corroborates what Mr. Boyer says in relation to his having been consulted by Boyer on the subject of the issuance of a warrant here. If Mr. Gorman advised the issuance of a warrant and the arrest of Jackson, and Mr. Boyer made a truthful statement of the facts of the matter as he knew them, or believed them to exist, then I charge you as a matter of law that Mr. Gorman's advice saves these defendants from the consequences of the arrest of Jackson; and if you think that Mr. Boyer acted honestly, and gave a full and truthful report of the circumstances which had come to his knowledge in relation to Mr. Jackson's behavior with respect to

the diamonds, your verdict ought to be in favor of the defendants. But if Mr. Boyer, acting on his own behalf and on behalf of Mr. Hillerson, gave an untrue statement of the facts as he believed them to exist, if he suppressed facts, if he suggested facts which he did not believe to exist, and the advice of Mr. Gorman for the issuance of the warrant of arrest for Jackson was obtained upon a false presentation of the matter to him, then supposing that the two defendants were connected in the matter and were co-operating together, and that Mr. Jackson was not guilty of any crime with respect to the diamonds, I charge you under that view of the case your verdict ought to be in favor of the plaintiff. Now what bears on this question of the truthfulness of Mr. Boyer in his dealings with the magistrate and his statement of the facts that he had ascertained? The magistrate produced here, or rather there is produced from the magistrate's former office, a book containing the information sworn to by Boyer on which the warrant issued. That information, as I recall it—it was read to you and you will recall it for yourselves—states nothing more than that Mr. Jackson had at that time in his possession certain diamonds to the value of about $200 belonging to Mr. Hillerson which he refused to give up. Now if that is all that Mr. Boyer gave the magistrate he did not tell the whole truth. He did not tell the magistrate that Mr. Jackson had found these gems. Mr. Boyer tells you that he did tell that fact to Mr. Gorman verbally, that it was not incorporated in the writing, that the writing only defectively set forth the story that he gave to the magistrate. And as I recall the testimony of Mr. Gorman when he took the witness stand, it was to the effect that Boyer had acquainted him with the fact that these gems had been found by Jackson. On the bare facts which are contained in this affidavit the magistrate had no business to issue a warrant.] [2]

[Now there is little left for me to say to you about

this matter.   Of course if you think that these two defendants were not co-operating together in causing Jackson's arrest, or if you think that Jackson was guilty of larceny, or larceny as bailee, with respect to the jewels, or if you think that Mr. Boyer gave a true statement of the facts as he knew them to Magistrate Gorman, and Mr. Gorman advised the arrest of Jackson, you need not concern yourselves with the question how his arrest affected Mr. Jackson.   But if you think that Mr. Boyer suppressed facts or gave an untrue statement, with the result that Mr. Gorman gave advice which resulted in the arrest of a man who was innocent, and if you think that in taking out the warrant Mr. Boyer was acting in concert with or on behalf of Mr. Hillerson, then you may render your verdict in favor of the plaintiff, and you may give him such a sum as will compensate him for the shame, the humiliation, the mental suffering that he endured as the result of his arrest.] [3]

Verdict and judgment for plaintiff for $250.   Defendants appealed.

*Errors assigned* were (1–3) above instructions, quoting them.

*John H. Fow* and *Bertram D. Rearick,* for appellants. —Prosecutions are presumed to have been properly instituted, and hence to sustain an action for malicious prosecution malice and want of probable cause must both concur and be proved by the plaintiff: McCarthy v. DeArmit, 99 Pa. 63; Gilliford v. Windel, 108 Pa. 142; Cooper v. Hart, 147 Pa. 594; Bernar v. Dunlap, 94 Pa. 329; Mahaffey v. Byers, 151 Pa. 92; McClafferty v. Philp, 151 Pa. 86; Emerson v. Cochran, 111 Pa. 619.

Whether or not there is sufficient evidence of probable cause is a question for the court: Bernar v. Dunlap, 94 Pa. 329; Boyd v. Kerr, 216 Pa. 259; Bruff v. Kendrick, 21 Pa. Superior Ct. 468.

The charge improperly expressed an opinion of the judge on the evidence: Burke v. Maxwell, 81 Pa. 139; Monier v. Phila. Rapid Transit Co., 227 Pa. 273.

*John M. Hill*, for appellee.—It has been held by a long line of cases that when one accused of crime has been discharged by a magistrate and brings an action of malicious prosecution against the prosecutor the burden of proving probable cause is on the defendant: Barhight v. Tammany, 158 Pa. 545.

It is not error for the trial judge to express an opinion provided it is explained to the jury as his private opinion: Fredericks v. Northern Central R. R. Co., 157 Pa. 103; Knee v. McDowell, 25 Pa. Superior Ct. 641.

OPINION BY ORLADY, J., April 19, 1915:

This case is clearly within the rule indicated in Leibig v. Steiner, 94 Pa. 466, "Exceptional cases arise where it is the duty of the trial judge to express his opinion of the facts and guide the minds of the jury to a correct view of the evidence; and therefore it has been settled that when he does so, without misleading or controlling them in the disposition of the facts, there is no error for reversal:" Knee v. McDowell, 25 Pa. Superior Ct. 641; Fredericks v. Northern Central Railroad, 157 Pa. 103.

Whether certain facts constitute probable cause must be determined by the court; but whether such alleged facts exist is for the jury to find. Where the facts are in controversy the subject must be submitted to the jury, in which event it is the duty of the court to instruct them what facts will constitute probable cause, and submit to them only the question of such facts. If the admitted facts amount to probable cause, the court should direct a verdict for the defendant: McCarthy v. DeArmitt, 99 Pa. 63; Bruff v. Kendrick, 21 Pa. Superior Ct. 468; Bosley v. Gerrity, 55 Pa. Superior Ct. 429.

The disputed questions of fact were fully and fairly submitted to the jury, and the instruction as to the

legal duty of these defendants before and at the time of making the arrest of the plaintiff, was fully warranted: Barhight v. Tammany, 158 Pa. 545; Smith v. Walter, 125 Pa. 453; Burk v. Howley, 179 Pa. 539.

The judgment is affirmed.