Lutz *v.* Foster & Kester Co., Inc. (et al., Appellant).

Argued January 9, 1951. Before DREW, C. J., STERN, STEARNE, JONES, BELL, LADNER and CHIDSEY, JJ.

*Francis L. Van Dusen,* with him *John S. Dawson* and *Barnes, Dechert, Price Myers & Clark,* for Bridgeport Brass Company, defendant, appellant.

*Abraham Wernick,* for plaintiff, appellee.

*Townsend Munson* and *Townsend, Elliott & Munson,* for defendant, Foster & Kester Co., Inc.

OPINION BY MR. JUSTICE JONES, March 21, 1951:

The plaintiff instituted this action in assumpsit by the issuance of a summons without more. One of the defendants, the present appellant, being a foreign corporation, filed preliminary objections to the jurisdiction on the ground that it was not doing business in Pennsylvania and, therefore, was not amenable to service in a suit instituted against it in this State. The plaintiff filed an answer to the preliminary objections and a hearing was had in the court below. On the testimony adduced by deposition and certain exhibits offered

in evidence, the court made findings on the basis whereof it overruled the preliminary objections. From that order, the objecting defendant brought this appeal.

Whether a foreign corporation is subject to the jurisdiction of a Pennsylvania court depends upon whether it is doing business within the Commonwealth which rests fundamentally upon a conclusion of ultimate fact: *New v. Robinson-Houchin Optical Company,* 357 Pa. 47, 49, 53 A. 2d 79; and *Holliday v. Pacific Atlantic Steamship Corporation,* 354 Pa. 271, 274, 47 A. 2d 254. For present purposes, we necessarily accept as verity the facts found by the learned court below which are not here attacked and upon which the court predicated its legal conclusion that the appellant was doing business in Pennsylvania. The pertinent primary facts are, therefore, as follows:

"At the time of the service of process in this suit the defendant was occupying the same room under a lease dated April 15, 1948, which states that the room is to be used as 'A sales and executive office in connection with its (the defendant's) brass and manufacturing business.' The lease was executed by the defendant. The rent is paid by the defendant from its main office in Connecticut.

"The defendant's name appears on the office door and on the directory of the Broad Street Station Building. The telephone is listed in the defendant's name and the charges are paid by the defendant. The defendant also pays for the telegraph services used by the branch office. The office is occupied by six employees, including a district sales manager, three salesmen, and two stenographers. The office contains six desks, some chairs, twelve file cases and a bookcase. The file cases contain branch office copies of orders, invoices and correspondence. The office equipment was furnished by the defendant. The Philadelphia office is listed on the defendant's stationery, and is listed in the defendant's

annual report as a branch office. In the last annual report of the defendant under the heading of 'Branch Offices', there is listed 'Philadelphia 3, Pa., Broad Street Station Building'.

"The defendant contends that the branch office is used exclusively for the solicitation of its business; that its salesmen have no authority to accept orders but only to travel through the district soliciting business for the company; and that all acceptances or rejections of orders are made at Bridgeport, Conn.

"However, in addition to soliciting orders the branch office also transmits complaints obtained from the customer and contacts the defendant to expedite the delivery of local orders. Drawings and blueprints are sent by the defendant's customers to the branch office. The defendant's customers cancel their orders through the branch office and also call at the branch office to transact their business. In a majority of cases of shipments of defective material the merchandise is handled through the branch office, either by the salesman calling in person for the material or by the customer delivering it to the branch office. Where possible, the salesmen settle complaints themselves without forwarding them to the main office.

"The defendant also has distributors throughout the Philadelphia sales district. The Cunningham Distributors handle defendant's Aerosol products, and a substantial number of distributors handle the defendant's plumbing products. All the orders from the various distributors are processed through the branch office. In addition, samples of defendant's products are sent by the defendant to the branch office. These samples are presented by the salesmen to the local customers for their approval. Upon approval, the customers send their orders either to the branch office or direct to the main office in Connecticut."

The problem, then, is to interpret the legal significance of the established facts in the light of applicable rules deducible from the decided cases. There is, however, no general principle or standard whereby it may be conclusively determined in all instances what constitutes "doing business". To an extent, the decision in each case depends upon its own peculiar facts: *New v. Robinson-Houchin Optical Company*, supra.

One definitely recognized principle, presently important, is that the mere solicitation of business within the Commonwealth did not constitute "doing business" within the meaning of the Act of 1851[1]: *Shambe v. Delaware & Hudson R. R. Co.*, 288 Pa. 240, 244, 135 A. 755; see also *New v. Robinson-Houchin Optical Company*, supra. There must be "other activities" in addition to the solicitation of business to make a foreign corporation's conduct the doing of business within the Commonwealth, as this court recognized in *New v. Robinson-Houchin Optical Company*, supra, upon quoting from *International Shoe Co. v. State of Washington*, 326 U.S. 310, to like effect. Such "other activities" do not consist of acts of courtesy performed by business solicitors, without compulsion, in order to satisfy or accommodate customers. Nor do they reside in the number of solicitors employed or the character and extent of the facilities provided them for carrying on their solicitations such as office space and office equipment of desks, typewriters, filing equipment and telephones, or in the identification of the company or its representatives emblazoned on the office door or printed in the telephone directory. The criterion is, rather, whether the local solicitors have authority to bind the foreign corporation by which they are employed. In

---

[1] Act of April 8, 1851, P. L. 353, 12 PS §1310, Section 6 whereof is suspended absolutely by Rule 2200, Pennsylvania Rules of Civil Procedure.

the *Shambe* case, supra, which involved local solicitation of freight for a railroad foreign to the jurisdiction, this court specified, inter alia, as "requisite essentials" to doing business that "(1) The company must be present in the State, (2) by an agent (International Harvester Company v. Kentucky [234 U.S. 579, and other cases]), (3) duly authorized to represent it in the State (International Harvester Co. v. Kentucky, supra) . . . ." A crucial factor in the *Shambe* case was that "Contracts are not made on account of freight, all must go to the principal office in New York." Likewise, here, the orders obtained by the defendant's solicitors were not binding on the company until they were received and accepted by it at its home office in Bridgeport, Connecticut.

The material facts in the instant case are so strikingly similar to those of the *Shambe* case as to make the two cases indistinguishable in principle. Accordingly, it is our opinion that, in legal contemplation, the appellant is not doing business in Pennsylvania.

Order reversed and writ quashed at the appellee's costs.