## Baker v. Aetco Equipment Co.

*Marks & Marks*, for plaintiffs.

*Voorhies, Dilley, Keck & Rowley* and *Wiesen, Cusick, Madden, Joyce, Acker & McKay*, for defendants.

RODGERS, P. J., July 21, 1958.—This matter is before the court on the preliminary objections of defendant Converto Manufacturing Company of Cambridge City, Ind., contesting the jurisdiction of this court alleging that the service on defendant was ineffective because defendant is not "a corporation doing business in the Commonwealth of Pennsylvania."

On October 18, 1957, plaintiff filed a complaint in trespass against the Aetco Equipment Company of Monroeville and the Converto Manufacturing Company of Cambridge City, Ind., alleging that plaintiff suffered personal injuries as a result of a defective hoist on a dump truck which was manufactured by Converto Manufacturing Company of Cambridge City, Ind., and installed by Aetco Equipment Company of Monroeville.

Service was attempted on Converto Manufacturing Company of Cambridge City, Ind., by mailing a copy of a complaint and the petition to the Secretary of the Commonwealth and to the Converto Manufacturing Company of Cambridge City, in Indiana, on the basis that the Converto Manufacturing Company was an unregistered, foreign corporation doing business in Pennsylvania.

On the basis of a hearing in this matter and on certain interrogatories filed with the court, we find:

(1) That Converto Manufacturing Company is an Indiana corporation not registered to do business in Pennsylvania;

(2) That Converto Manufacturing Company maintains no offices or places of business in this Commonwealth and has no agents residing in Pennsylvania;

(3) That Converto Manufacturing Company exercises no control over the installation of or handling of machinery sold to customers in Pennsylvania;

(4) That Aetco Equipment Company has purchased equipment and parts from the Converto Manufacturing Company since 1953;

(5) That the cash value of this equipment in 1955 was approximately $20,000 and in 1956 was approximately $40,000;

(6) That in 1953 Aetco was contacted by representatives of Converto soliciting business on its behalf; that in addition during this period of time considerable business was transacted by Aetco directly, with Converto by telephone;

(7) That all orders solicited in Pennsylvania by the itinerant representatives were subject to approval by Converto at Cambridge City, Ind., that the traveling agents did not have authority to make a binding contract;

(8) That Converto made deliveries of equipment in Pennsylvania;

(9) That the solicitation of orders and delivery of subject matter of these orders to customers in Pennsylvania constituted the entire scope of Converto.

The question before this court is whether or not defendant Converto has engaged in activities in Pennsylvania to such an extent as to be considered a foreign corporation "doing business" in Pennsylvania, thereby subjecting itself to the jurisdiction of this court. It is universally agreed that in Pennsylvania the question of "doing business" in the State is a question of ultimate fact with each case being decided on its own peculiar facts. In recent years there have been two distinct standards applied to ascertain whether the particular facts constitute sufficient minimum contact in the State to establish a substantive basis of jurisdiction. One standard is known as the "solicitation plus" or "other activities" doctrine; the other is known as the "pecuniary benefit" theory. The "solicitation plus" doctrine was clearly spelled out in Shambe v. Delaware & Hudson R. R. Co., 288 Pa. 240 (1927), and it has been more recently articulated in Lutz v. Foster & Kester Co., Inc., 367 Pa. 125, 129, 79 A. 2d 222 (1951), as follows:

"There is, however, no general principle or standard whereby it may be conclusively determined in all instances what constitutes 'doing business'. To an extent, the decision in each case depends upon its own peculiar facts . . .

"One definitely recognized principle, presently important, is that the mere solicitation of business within the Commonwealth did not constitute 'doing business' within the meaning of the Act of 1851 [Act of April 8, 1851, P. L. 353, 12 PS §1310]."

These leading cases agree that solicitation alone is not sufficient for the exercise of jurisdictional powers under the Act of 1851, and that the foreign corporation must engage in "other activities." Lutz, supra,

indicates that "other activities" are not simply the maintenance of offices in this State merely for purposes of solicitation, nor the number of employes in these offices, nor the various courtesies or services offered to the customers, but:

"The criterion is, rather, whether the local solicitors have authority to bind the foreign corporation by which they are employed": Lutz v. Foster & Kester Co., Inc., 367 Pa. 125, 129.

"A crucial factor in the Shambe case was that 'contracts are not made on account of freight, all must go to the principal office in New York.' Likewise, here the orders obtained by the defendant's solicitors were not binding on the company until they were received and accepted by it at its home office in Bridgeport, Connecticut": Lutz v. Foster & Kester Co., Inc., 367 Pa. 125, 130.

It would seem, therefore, that to be "doing business" in Pennsylvania, the solicitors of the foreign corporation must have the authority to consummate a binding contract. This is a much harsher standard than that of the more recent "pecuniary benefit" theory based on a 1951 legislative enactment of subsection C to the Business Corporation Law of May 5, 1933, P. L. 364, 15 PS §2852-1011, which stated:

". . . the entry of any corporation into this Commonwealth for the doing of a series of similar acts for the purpose of thereby realizing pecuniary benefit or otherwise accomplishing an object, or doing a single act in this Commonwealth for such purpose with the intention of thereby initiating a series of such acts, shall constitute 'doing business'."

By the Act of July 11, 1957, P. L. 711, this paragraph was deleted. In the interim period, however, it was to enjoy a certain popularity which was primarily restricted to the Federal courts in diversity cases where the courts interpreted the act to facilitate the

service of process under Fed. R. C. P. 4 (*d*) (7). Jenkins v. Dell Publishing Company, Inc., 130 F. Supp. 104, 107 (1955), is illustrative of this trend. The court stated:

"Prior to the enactment of this statute, it is clear that defendant could not be considered as doing business in Pennsylvania. . . . Insofar as we can determine, there has been no judicial application of Subsection C, but since, in a diversity action, this court sits as another Pennsylvania court, Angel v. Bullington, 1947, 330 U. S. 183, 67 S. Ct. 657, 91 L. Ed. 832, we must do our best to interpret the statute as we believe the Supreme Court of Pennsylvania would interpret it. It is our judgment that the statute is a plain expression of the State's power to declare what is 'doing business' in Pennsylvania; that power is extended by the statute to include the entry of a corporation into Pennsylvania 'for the doing of a series of similar acts' designed to produce 'pecuniary benefit' or 'otherwise accomplishing an object.' The defendant admits that eight of its agents were regularly employed in Pennsylvania, and one of them in the Pittsburgh district, for the purpose of promoting the business of the defendant, building good-will and encouraging the sale of its magazine. Thus the corporation cannot successfully deny that it made entries by its agents into Pennsylvania in order to accomplish the purpose expressed in Subsection C."

Hence the "pecuniary benefit" theory had been interpreted so broadly as to include the mere promotion of business without even the solicitation of orders.

As to the effect of this new rule upon the "solicitation plus" standard, as expressed in the Lutz case, Kulicke v. Rollway Bearing Company, Inc., 131 F. Supp. 572, 575 (1955), is quite explicit:

"There can be no doubt of the fact that the defendant has entered the Commonwealth for the doing 'of a

series of similar acts for the purpose of thereby realizing pecuniary benefit.' In my judgment the amendment nullifies, in part, the effect of the Lutz opinion."

The part of the Lutz opinion nullified, of course, was that part pertaining to the requirement of a power to bind in contract in addition to solicitation in the State. It seems clear that in the Federal courts the Lutz rule had been supplanted by subsection C.

One State court seemed unwilling to accept the liberal interpretation. of the Federal courts. Crevar v. Duquesne Motor Coach Lines, 103 Pitts. L. J. 124 (1955), referred to subsection C only after making it perfectly clear that the Lutz case was still the rule and that the agent *did* have the power to make a binding contract. In contrast to this attitude, Ramey v. Donora Southern R. R. Co., 13 D. & C. 2d 732, is a specific application of the pecuniary benefit rule to a subsection C situation. Though defendant's agents did not have power to bind in this case, they had maintained offices in Pennsylvania over a period of years for the purpose of soliciting business. The court held that Lutz and Shambe had been overcome by subsection C, and that defendant here was doing business under subsection C. The liberal inclinations of the court are indicated in dictum at page 736:

"Even prior to the enactment of this amendment, there had arisen a feeling that where, as in this case, soliciting activities were a regular, continuous and sustained course of business, the 'mere solicitation' rule should be abandoned and the problem approached in the light of commercial reality. It is clear to this court that the Pennsylvania legislature by the said amendment intended this result."

This court subscribes to this holding and feels that under the "pecuniary benefit" theory defendant could be considered to be "doing business" in Pennsylvania. It is just as clear that defendant was not doing busi-

ness under the Lutz "solicitation plus" rule. We must therefore determine which of the two theories should be applied.

The cause of action arose on September 12, 1956, but the complaint was not filed until November 19, 1957. The Act of July 11, 1957, P. L. 711, 15 PS §2852-1011, which omitted subsection C, became effective on September 1, 1957. Procedural matters are controlled by the legislation in effect at the time of the institution of an action and not by that in effect at the time the incident gave rise to the cause of action. As our Superior Court said in Cheltenham & Abington Sewerage Co. v. Pennsylvania Public Utility Commission, 159 Pa. Superior Ct. 59, 64, in distinction to substantive laws: " 'Procedure is a matter of statutory regulation, and, unless prevented by the Constitution, the legislature may alter it at will, provided the obligations of contracts are not impaired.' "

The controlling statute is that which was in effect at the time suit was instituted and service attempted. Our Supreme Court was even more specific in Koll v. Pickford, 353 Pa. 118, 121, after stating that the Rules of Civil Procedure had the effect of a statute, said: "As this suit was begun after the effective date of the Rules of Civil Procedure, those rules are controlling."

Having been deleted from the statute prior to the institution of this suit, it is clear that subsection C can have no application to this action. We must, therefore, apply the "solicitation plus" doctrine which requires us to hold that defendant corporation was not "doing business" in Pennsylvania and is, therefore, not subject to the jurisdiction of this court.