## Norcross, Inc. v. Philadelphia Tax Review Board

*William G. Handfield,* for plaintiff.
*Jerome J. Smith,* for defendant.

McDEVITT, J., August 6, 1969.—This case comes before the court on an appeal from the decision of the Tax Review Board on a petition for review of the mercantile license tax and wage tax withholding assessments made by the City of Philadelphia against Norcross, Inc., of 244 Madison Avenue, New York City, New York, covering tax, penalty and interest as follows:

| Type Tax | Year | Tax | Interest & Penalty | |
|---|---|---|---|---|
| Wage tax | 1946-66 | $9,470.00 | $11,196.61 | $20,666.61 |
| Mercantile license tax | 1955-66 | $22,251.77 | $28.904.44 | $51,156.21 |

The decision of the Philadelphia Tax Review Board dated August 16, 1968, is as follows: "Petition denied."

Norcross, Inc., is a New York corporation with its principal place of business at 244 Madison Avenue, New York, N. Y. Norcross is engaged in the distribution and sale of greeting cards, wrapping materials and stationery in all of the States in the continental United States. The products of Norcross are produced, warehoused and shipped from two New York City locations, one in Brooklyn and the other in Queens.

Norcross operates through several "sales districts" throughout the country. One of these sales districts, known as the "Philadelphia Sales District," operates over a tri-State area and comprises primarily the Counties of Philadelphia, Montgomery, Delaware, Chester and Bucks in Pennsylvania, the Counties of Kent, New Castle and Sussex in Delaware and nine counties in Maryland. Also within the ambit of this sales district are certain Philadelphia department stores with branches in Burlington and Camden Counties, N. J.

Sales of Norcross products to customers in Philadelphia during the years from 1953 and through 1966 were as follows:

| Year | Amount |
|------|--------|
| 1953 | $459,982 |
| 1954 | 448,366 |
| 1955 | 432,863 |
| 1956 | 444,776 |
| 1957 | 465,467 |
| 1958 | 481,276 |
| 1959 | 493,761 |
| 1960 | 504,255 |
| 1961 | 490,046 |
| 1962 | 535,693 |
| 1963 | 582,922 |
| 1964 | 630,909 |

1965 . . . . . . . . . . . . . . . . . . . . . . 645,427
1966 . . . . . . . . . . . . . . . . . . . . . . 693,877

In the Philadelphia sales district, Norcross is represented by a district sales manager who has general supervisory responsibility over the seven or eight traveling salesmen in the district. The latter solicit sales in stores throughout the 19 counties in this sales district. It is the responsibility of each of the salesmen to solicit new accounts and, once they have established a new account, to solicit repeat sales on a regular and seasonal basis. The Philadelphia district sales manager, Mr. Paul Franzen, maintains an office in the Philadelphia Saving Fund Society Building. In addition to his supervision of salesmen, it is his responsibility to maintain a sales program in the principal department stores in Philadelphia and their branch stores in surrounding communities.

All of the orders solicited by Mr. Franzen and his salesmen are sent by mail to New York where they are processed by Norcross personnel at the Norcross office in New York City.

No one in the Philadelphia sales district has the authority to contractually bind Norcross regarding the accounts in the district, as all orders are subject to both credit check and approval in the New York office. The acceptable orders are thereafter filled and shipped directly by Norcross to the customer from the New York City distribution centers. The Philadelphia customers are then billed directly by New York without further handling or solicitation by the salesmen in the district. All bills are paid directly to Norcross in New York and salesmen are not authorized at any time to receive payment for the regular orders of the company.

Norcross does not have any place of business in the City of Philadelphia, nor does it maintain any stock of goods or inventory in Philadelphia or within

the State of Pennsylvania. Norcross is not registered to do business in Pennsylvania, nor does it maintain any property other than one or two racks on loan to Mr. Franzen for his use in connection with the office maintained by him in the PSFS Building.

The two city taxes which are the subject matter of the instant controversy are the mercantile license tax, Philadelphia Code §19-1000, et seq., and the Philadelphia wage tax, Philadelphia Code §19-1504.

The mercantile license tax is imposed upon the gross receipts of a commercial entity *doing business* within the boundaries of Philadelphia. "Business" is defined as:

"the carrying on or exercising for gain or profit within the City any trade, business, or making sales to any persons within the City. . .": Section 19-1000.

The obligation to withhold the wage tax created by the provisions of section 19-1504 is imposed as follows:

"(1) Each employer within the City who employs one or more persons on a salary, wage, commission or other compensation basis shall deduct . . . at the time of payment thereof, the tax imposed by this Chapter. . ."

Whether Norcross is carrying on a trade or doing business within the city so as to be subject to taxation by the City of Philadelphia is the principal issue in this case. It was stipulated that the determination of the board with respect to the question of whether Norcross is doing business in Philadelphia would be applicable to both the mercantile license tax and the wage withholding tax.

Upon a review of the record, the court finds that appellant is not "doing business" in Philadelphia in such manner as to be amenable to the taxing authority of the City of Philadelphia: Shambe v. Delaware & Hudson R. R. Co., 288 Pa. 240 (1927); Lutz v. Foster

& Kester, Inc., 367 Pa. 125 (1951); Motch & Merry-weather Machinery Co. v. Pittsburgh School District, 381 Pa. 619 (1955); Alan Wood Steel Company v. Philadelphia School District, 425 Pa. 455 (1967); Business Tax Bureau of Philadelphia School District v. American Cyanamid Company, 426 Pa. 69 (1967).

The activities of Norcross, Inc., in Philadelphia and the physical manifestations of its presence here are virtually indistinguishable from the activities and manifestations of presence which were before the Supreme Court in the Lutz case, supra. The city has emphasized the facts that Norcross employs two college students to assist in servicing its larger accounts in the city and that two secretaries are employed in the district manager's office. The cost of these four employes is shared equally by Norcross and its district manager. The fact that these employes are not *directly* engaged in selling is not significant. The college students are described as "an extra arm of the salesmen" at page 3 of the city's brief, and this is an apt description of their function. They merely perform some of the necessary functions of the salesmen for the larger accounts which the salesmen themselves perform, as an integral part of their selling activity for the smaller accounts. The duties of the secretaries, also, are support activities that are integral to the sales force's job of solicitation. See also, Lutz, supra, in which two stenographers were employed in the local sales office.

Also emphasized by the city is the fact that the salesmen do more than merely solicit business and take orders. They also assist the customer in checking inventory and reordering items. They help in setting up displays of Norcross products in the customer's store and provide the customer with promotional material for display in his store. Finally, the salesmen act as "control" agents in certain stores;

they supervise the reordering not only of Norcross products but also of the products of Norcross' competitors. The competitors' salesmen reciprocate this service in other stores. These activities of the salesmen, though they may not be "selling" in the strict sense, are obviously done for the purpose of gaining new accounts or retaining and increasing older accounts; thus, they cannot be regarded as other than solicitation of business.

Nor are we impressed with the fact that three of the seven salesmen in the tri-State sales district live in Philadelphia. The place where Norcross' employes reside, a matter personal to each employe, has no effect whatsoever on the amenability of Norcross itself to the taxing powers of the City of Philadelphia.

The important facts in this case are that Norcross conducts a sales operation in Philadelphia and that the local sales force has no authority to bind Norcross, a New York based corporation. All orders are sent to the New York office for acceptance; no order obtained by a salesman in Philadelphia is binding on Norcross until Norcross receives and accepts the order at its home office. The existence of a sales office in Philadelphia, the presence of secretaries, the identification of the company emblazoned on the door of the sales office, the listing in the local telephone directory, the acts of courtesy performed by the salesmen in order to satisfy or accommodate customers, the frequency of customer contacts and the volume of business generated thereby, all these factors do not amount to the "other activities" in addition to solicitation that are required to support a finding that Norcross is "doing business" in Philadelphia. See Lutz v. Foster & Kester Co., Inc., supra.

The city has argued that the court would be "closing its eyes to business realities" and "perpetuating a fiction" by accepting Norcross' argument that the

"solicitation-plus" doctrine applies to the facts of the case at bar. This court tends to agree that it is indeed perpetuating a fiction. Nevertheless, the doctrine is clearly applicable to the facts of the present case and the result under the law as it now stands is that the appeal from the decision of the tax review board must be sustained.

Finally, since the court has found that the activities and presence of Norcross in Philadelphia do not amount to more than solicitation of business, it must also conclude that the privilege tax in the present case is imposed on sales deriving from purely inter- state commerce and is, accordingly, unconstitutional. See Spector Motor Service, Inc. v. O'Connor, Tax Commissioner, 340 U. S. 602 (1951).

### ORDER

And now, August 6, 1969, it is ordered that the ex- ceptions of Norcross, Inc., to the decision of the tax review board be, and the same hereby are, sustained. The appeal of Norcross, Inc., is granted, and the de- cision of the tax review board is reversed.