## McCrory Corporation v. Girard Rubber Corporation

*Wallace J. Knox*, for plaintiff.
*Norman H. Stark*, for defendant.

McCLELLAND, J., November 9, 1972.—Plaintiff, hereafter called "McCrory," filed a complaint in assumpsit against defendant, hereafter called "Girard." Basically, McCrory lost a lawsuit in the United States District Court in Erie to the extent of over $50,000 and they seek indemnification from Girard. A minor party was injured by a toy arrow which contained a defective rubber suction cup tip, manufactured by Girard. McCrory notified Girard of the Federal trial but Girard refused to participate in the defense of the case.

The toy arrow was purchased by McCrory from a Tennessee company and the suction cup tip had been sold to the Tennessee company by Girard.

The tenuous nature of Girard's connection with Pennsylvania is that about five percent of its business is done in Pennsylvania.

Girard filed preliminary objections containing numerous allegations, the chief of which is that "this

Court lacks jurisdiction because the defendant is a corporation not doing business within Pennsylvania."

Initially, as Judge Hoffman stated:

"Rule 1028(c) of the Pennsylvania Rules of Civil Procedure provides that '[t]he court shall determine promptly all preliminary objections. If an issue of fact is raised, the court shall take evidence by depositions or otherwise.' . . . In the instant case where appellant argued that it was not amenable to suit because it was not doing business in the Commonwealth, the taking of evidence by the court before decision was required. Zeitchick Estate v. Zeitchick, 215 Pa. Superior Ct. 106, 257 A. 2d 371 (1969), and Szekely v. Abilene Flour Mills Co., 211 Pa. Superior Ct. 442, 237 A. 2d 242 (1967)": Luria v. Luria, 220 Pa. Superior Ct. 168 (1971).

All parties herein agree that the pleadings and interrogatories have defined the essential facts so no additional evidence is necessary.

For over 120 years the prime requisite for in personam jurisdiction in Pennsylvania over unregistered foreign corporations has been the "doing of business" by the corporation in Pennsylvania. In Shambe v. Delaware & Hudson R. R. Co., 288 Pa. 240 (1927), the Pennsylvania Supreme Court cited:

"The essential elements which constitute 'doing business,' as required by our laws, are the same as those necessary under the due process clause of the federal Constitution. We must ascertain if the following requisite essentials appear in this case: (1) The company must be present in the State, (2) by an agent (International Harvester Company v. Kentucky, supra; Chipman, Ltd., v. Jeffery Co., supra; Eline v. Western Maryland Ry. Co., supra; Riverside Mills v. Menefee, supra; Connecticut Mutual Life Insurance Co. v.

Spratley, 172 U.S. 602; Peoples Tobacco Co., Ltd., v. American Tobacco Co., 246 U. S. 79), (3) duly authorized to represent it in the State (International Harvester Co. v. Kentucky, supra); (4) the business transacted therein must be by or through such agent (Connecticut Mutual Life Insurance Co. v. Spratley, supra, 618; Chipman, Ltd., v. Jeffery Co., supra); (5) the business engaged in must be sufficient in quantity and quality (Rosenberg Co. v. Curtis Brown Co., supra; Green v. Chicago, Burlington & Quincy Ry. Co., supra; Connecticut Mutual Life Insurance Co. v. Spratley, supra; Bank of America v. Whitney Central National Bank, supra; Jackson v. Hillerson, 59 Pa. Superior Ct. 508, 515); (6) there must be a statute making such corporations amenable to suit (Connecticut Mutual Life Insurance Co. v. Spratley, supra). The term 'quality of acts' means those directly, furthering or essential to, corporate objects; they do not include incidental acts: Jackson v. Hillerson, supra; Green v. Chicago, Burlington & Quincy Ry. Co., supra. By 'quantity of acts' is meant those which are so continuous and sufficient to be termed general or habitual. A single act is not enough: Hunau v. Northern Region Supply Corporation, 262 Federal 181. Each case must depend on its own facts, and must show that the essential requirement of jurisdiction has been complied with."

Known as the "other activities" doctrine or the "solicitation plus" doctrine, these criteria were applied by our courts. [See 27 University of Pittsburgh Law Review 879, "Jurisdiction over Unregistered Foreign Corporations Doing Business in Pennsylvania: Confusion in Perspective" for a complete history of the problem until 1966.]

In 1945, the Supreme Court of the United States

relaxed these rigid standards in the seminal case of International Shoe Co. v. Washington, 326 U. S. 310 (1945). Chief Justice Stone wrote:

"Historically the jurisdiction of courts to render judgment in personam is grounded on their de facto power over the defendant's person. Hence his presence within the territorial jurisdiction of a court was prerequisite to its rendition of a judgment personally binding him. Pennoyer v. Neff, 95 U. S. 714, 733 [24 L. ed. 565 572]. But now that the capias ad respondendum has given way to personal service of summons or other form of notice, due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'

"It is evident that the criteria by which we mark the boundary line between those activities which justify the subjection of a corporation to suit, and those which do not, cannot be simply mechanical or quantitative. The test is not merely, as has sometimes been suggested, whether the activity, which the corporation has seen fit to procure through its agents in another state, is a little more or a little less. St. Louis S. W. R. Co. v. Alexander, supra, [227 U. S. 218, 57 L. ed. 486, 33 S. Ct. 245, Ann. Cas. 1915B 77]; International Harvester Co. v. Kentucky, supra [234 U. S. 579, 58 L. ed. 1479, 34 S. Ct. 944]. Whether due process is satisfied must depend rather upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure. That clause does not contemplate that a state may make binding a judgment in personam against an individual or corporate

defendant with which the state has no contacts, ties, or relations. Cf. Pennoyer v. Neff [95 U. S. 714, 24 L. ed. 565], supra; Minnesota Commercial Assn. v. Benn 261 U. S. 140, 67 L. ed. 573, 43 S. Ct. 293].

"But to the extent that a corporation exercises the privilege of conducting activities within a state, it enjoys the benefits and protection of the laws of that state. The exercise of that privilege may give rise to obligations, and, so far as those obligations arise out of or are connected with the activities within the state, a procedure which requires the corporation to respond to a suit brought to enforce them can, in most instances, hardly be said to be undue."

The International Shoe Case revolutionized the "doing business" concept and has been widely examined in legal literature. Fascinating studies in depth of this subject are found in Volume 2, "Corporation Law and Practice" by George D. Hornstein, section 581, et seq.; Cyclopedia of the Law of Private Corporations, Fletcher, §8709, et seq.; The Trial Lawyers' Guide 1968 Annual, page 380, et seq.; and for Pennsylvania law, 9 P. L. Encyc. §521, et seq., under Corporations.

Pennsylvania eventually joined the mainstream and asserted through Justice Pomeroy:

"Whether a corporation is 'doing business' in a jurisdiction is a matter of fact to be resolved on an ad hoc or case-by-case basis and not by application of a mechanical rule. Myers v. Mooney Aircraft, Inc., 429 Pa. 177, 185, 240 A. 2d 505 (1967) and Lutz v. Foster & Kester Co., Inc., 367 Pa. 125, 79 A. 2d 222 (1951).

"This Court has long since recognized that '[t]he purpose of the Act of 1933, supra, [the Business Corporation Law] is to bring foreign corporations doing business in this State within the reach of legal process. The act is for the protection of those with whom such

corporations do business or to whom they may incur liabilities by their wrongful acts.' Hoffman Construction Co. v. Erwin, 331 Pa. 384, 386, 200 Atl. 579 (1938). Moreover, the legislature, by successive amendments to the Business Corporation Law, has greatly extended the jurisdiction of the courts of this Commonwealth over non-registered foreign corporations": Wenzel v. Morris Distributing Co., Inc., 439 Pa. 364 (1970).

As late as 1966, however, the mainstream extension of jurisdiction was not overextended if we credit the thoughts of Judge Hoffman. In Cecere v. Ohringer Home Furniture Co., 208 Pa. Superior Ct. 138 (1966), he wrote:

"Thus, while the 'solicitation plus' rule has been extended, the Supreme Court in Swavely severely limited the concept of 'doing business' by concluding that the distribution of products in Pennsylvania by the foreign corporation was not sufficient basis for jurisdiction. It held that the test, in part, includes, the 'entry' into the Commonwealth by the foreign corporation by the physical presence of agents or property. . . .

"This approach seems unduly harsh in an era of instant communication, rapid transportation and modern marketing methods which frequently involve distribution of products on a nationwide scale without regard to state boundaries. As Mr. Justice Black recognized in McGee v. International Life Insurance Co., 355 U. S. 220, 222-23 (1957), 'Today many commercial transactions touch two or more States and may involve parties separated by a full continent. With this increasing nationalization of commerce has come a great increase in the amount of business conducted by mail across state lines. At the same time modern transportation and communication have made it much less burdensome for a party sued to defend

himself in a State where he engages in economic activity.' To allow a company to send its products into interstate commerce and yet remain subject to suit only within its own state borders appears patently unfair.

"First, a manufacturer should be subject to jurisdiction when his product gives rise to a cause of action within a foreign jurisdiction, even though it had no other contact with the state. The foreign corporation's economic purpose and objective is to develop a market for its product in the foreign jurisdiction. It avails itself of the privilege of conducting activities within the state. It knows that its manner of commerce will have consequences in the foreign state. There is no unfairness, therefore, in requiring that it defend its product in a state in which it has sought pecuniary gain.

"Conversely, a requirement that a plaintiff transport himself and his witnesses to a foreign state to bring suit against a foreign corporation may render a very great hardship and make suit impossible. Moreover, it might necessitate the institution of multiple litigation in several states against numerous companies which are potentially liable.

"Finally, the forum state has a substantial interest in taking jurisdiction over a non-domiciliary which is responsible for the shipment into the state of a defective or negligently manufactured product. This is especially true when the product has harmed one of its citizens. Furthermore, the state has a decided interest in assuring that its citizens are not denied damages because of the inconvenience or expense of bringing suit in a distant jurisdiction.

"Similarly, our Commonwealth's right to assert jurisdiction over a foreign corporation should not depend on whether the corporation's representative in the state was technically an agent or an indepen-

dent contractor. A more fruitful and proper determination of jurisdiction might include a consideration of the parties relative access to proof and witnesses, the relative hardship to the parties, the foreseeability of consequences in a foreign state, the nature of the injury, and the nature of the corporation's business and activities. Certainly, a flexible standard should be adopted which will test the reasonableness of subjecting a foreign corporation to jurisdiction in the forum state."

Judge Hoffman's obiter dicta were persuasive because on July 20, 1968, the General Assembly, at long last, amended 15 PS §2011 (c), which now reads:

"For the purposes of determining jurisdictions of courts within this Commonwealth, the doing by any corporation in this Commonwealth of a series of similar acts for the purpose of thereby realizing pecuniary benefit or otherwise accomplishing an object, or doing a single act in this Commonwealth for such purpose, with the intention of thereby initiating a series of such acts, shall constitute 'doing business.' For the purposes of this subsection the shipping of merchandise directly or indirectly into or through this Commonwealth shall be considered the doing of such an act in this Commonwealth."

Since the date of the amendment, six Federal and Pennsylvania cases have been decided. I consider them seriatim.

On September 11, 1969, the Superior Court of Pennsylvania decided Nettis v. Di Lido Hotel, 215 Pa. Superior Ct. 284 (1969). Judge Cercone was the author of the opinion. Wrote Judge Cercone:

"The question of the validity of service of process upon a foreign corporation has been one of frequent occurrence in judicial decisions. The various circumstances found in each case make it difficult to establish

any well-defined formula for determining what constitutes the 'doing of business' by a foreign corporation so as to subject it to a particular jurisdiction. Each case must be decided on its own facts. The trend, however, has been toward a wider assertion of power over non-residents and foreign corporations than was considered permissible in Pennsylvania under the 'mere solicitation' or 'solicitation plus' tradition found in the cases of Shambe v. Delaware Hudson Railroad Co. (1927), 288 Pa. 240; and Lutz v. Foster & Kester Co., Inc., (1951), 367 Pa. 125; or in the early Federal case of Pennoyer v. Neff, 95 U. S. 714.

"Despite the tendency to liberalize State authority over the activities of a foreign corporation, there is the limitation provided by the due process clause of the Fourteenth Amendment to the United States Constitution: Williams v. Connolly, 227 F. Supp. 539, (1964); Florio v. Powder Power Tool Corp., 248 F. 2d 367; International Shoe Company v. State of Washington, 326 U. S. 310 (1945). If the provisions of the due process clause are not satisfied, then State jurisdiction, despite State legislation authorizing it, cannot be established over the activity of a foreign corporation."

After a consideration of the International Shoe Company case, Judge Cercone came to these conclusions:

"The important words in International Shoe, supra, are 'contacts, ties, or relations' with the forum state. These words necessarily relate to the quality and nature of a foreign corporation's activity within the forum state—a quality and nature which must establish such contact with the state that makes it fair and reasonable for the corporation to answer for its obligations within the state. . .

"The requirement for State jurisdiction over foreign corporations is that the act or acts of the corporation

have a substantial connection with the State of the forum: Williams v. Connolly, 227 F. Supp. 539 (1964); Florio v. Powder Power Tool Co., 248 F. 2d 367; and Kulicke v. Rollway Bearing Co., Inc., 131 F. Supp. 572 (1955)."

To say the least, Judge Cercone delimited the statutory verbiage of section 2011(c).

In October, 1970, the United States District Court for the Eastern District of Pennsylvania, speaking through District Judge Lord, held that the shipment of goods into Pennsylvania more than supplied the "minimal contacts" required to exercise jurisdiction over the shipper: Carl v. Positive Safety Mfg. Co., 316 F. Supp. 1302 (1970).

In April, 1971, the same Federal Court, speaking through District Judge VanArtsdalen, came to these enlightened conclusions:

"Because the Amendment is relatively new, no controlling Pennsylvania case has been found which interprets this specific language. From a reading of the Pennsylvania case law as to what constitutes 'doing business,' it appears that the Pennsylvania Supreme Court has adopted a liberal view. It further appears that the language added in 1968 was intended to reach to the constitutional limit as announced in International Shoe Company v. State of Washington, 326 U. S. 310, 66 S. Ct. 154, 90 L. Ed. 95. The International Shoe case established the due process test of such 'minimal contacts' as do not offend one's sense of fair play and equal justice. That standard is naturally broad enough to encompass the diverse factual situations to which it must be applied.

"In Keckler v. Brookwood Country Club, 248 F. Supp. 645 (N.D. Ill. 1965), the federal district court was called on to interpret the meaning of an Illinois

statute which gave Illinois in personam jurisdiction over a person who committed a tortious act in that state. The Keckler court noted at page 650:

" 'The manner in which the injury-producing defect came about has no impact on the question of jurisdiction: the jurisdictional act is not the creation of a defect, but the distribution of defective products in a national way. When a manufacturer voluntarily chooses to sell his product in a way in which it will be resold from dealer to dealer, transferred from hand to hand and transported from state to state, he cannot reasonably claim that he is surprised as being held to answer in any state for the damage the product causes.'

"In the recent case of Duple Motor Bodies, Ltd. v. Hollingsworth, 417 F. 2d 231 (9th Cir. 1969), the Ninth Circuit interpreting a tortious act statute said:

'We do not regard it as offensive to fair play or substantial justice or an undue burden on foreign trade to require a manufacturer to defend his product wherever he himself has placed it, either directly or through the normal distributive channels of trade. If it is clearly foreseeable as a result of trade with a foreign state that injury from a defective product (if it occurs) would occur in that state, the hardship of defending the product in that state in our judgment must be assumed as an attribute of foreign trade.'

[4] "The Amendment in question was adopted by the Pennsylvania legislature after the Supreme Court of Pennsylvania adopted the concept of strict liability as set forth in Section 402A, Restatement of Torts 2nd (1965), Webb v. Zern, 422 Pa. 424, 220 A. 2d 853. It is reasonable to conclude that one of the purposes of this legislation was to make amenable to Pennsylvania jurisdiction those foreign corporations whose products

cause damage or injury in Pennsylvania however circuitous their distributive chain may be": Benn v. Linden Crane, 326 F. Supp. 995 (1971).

In the Benn case, a crane was shipped from Sweden to a Connecticut purchaser and circuitously arrived in Pennsylvania where injuries occurred. The court decided the Swedish manufacturer was "doing business' in Pennsylvania.

In June, 1971, the Court of Common Pleas of Northampton County, in an opinion by Judge Franciosa, upheld jurisdiction over an Oregon corporation. The court relied, in large part, upon the Benn case and quoted from Judge VanArtsdalen's decision with approval. The court did make a statement which I consider worthy, to wit: "A shipment of goods indicates a conscious placement of those goods into the stream of commerce": Garis v. Mouldings, Inc., 53 D. & C. 2d 53 (1971).

In August, 1971, the Federal Court for the Erie District, speaking through our comrade District Judge William Knox, extended the "doing business" concept to obtain jurisdiction over a French corporation which sold the crane to another French corporation which sold the crane to a corporation which had exclusive distribution rights in the United States and said crane eventually caused an injury in Pennsylvania: Gorso v. Bell Equipment Corp., 330 F. Supp. 834 (1971).

In January, 1972, the Philadelphia County case of Delaware Valley Surgical Supply Co., Inc. v. Geriatric & Medical Centers, Inc., 53 D. & C. 2d 775 (1972), was decided but it adds nothing to any points at issue.

Obviously, the Pennsylvania courts are more conservative than the Federal courts in their approach to the "doing business' concept.

To come to this precise case, obviously Girard shipped the suction cup tip indirectly into this Com-

monwealth and therefore Girard comes within the literal language of section 2011(c).

Obviously, also, Girard had a closer connection with Pennsylvania than the Swedish corporation in the Benn case or the French corporation in the Gorso case.

I do not believe a Pennsylvania citizen should be forced to travel to some distant court to seek redress from a foreign corporation. If a foreign corporation receives the economic benefit of Pennsylvania's market, let that foreign corporation bear the burden of defending a lawsuit in Pennsylvania. As Robert E. McKee, Jr., wrote in 27 University of Pittsburgh Law Review, 879 at page 887 (1966):

"It is therefore urged that the Pennsylvania state courts, in applying section 1011C in the future, adopt the 'businessman's point of view' concept of the federal courts and look to the economic realities of the business community. 'In this field, realism, not formalism, should be dominant; the problem must be solved in the light of commercial actuality, not in the aura of juristic semantics.' "

It is late in the nuclear age to be stratified to invisible boundaries of nations; not to speak of boroughs, townships, counties and States.

I believe if a manufacturer sells a product anywhere in the United States, knowing that product can be moved in the stream of commerce into any other state and, if in fact that product arrives in Pennsylvania and causes an injury in this Commonwealth, that manufacturer should answer to the injured Pennsylvanian in Pennsylvania.

I believe this view bespeaks the meaning of section 2011(c) as amended and is exemplified by many of the cases heretofore mentioned in this opinion.

In short, I conclude that Girard was doing business in Pennsylvania and is subject to our jurisdiction.

The other stated reasons for the preliminary objections are dismissed without opinion.

ORDER OF COURT

And now, November 9, 1972, the preliminary objections of Girard are dismissed.